# Rockcastle Mining, Lumber & Oil Company v. Baker, et al.

(Decided November 24, 1915.)

## Appeal from Jackson Circuit Court.

1. Marriage—Husband and Wife—Presumption of Marriage.—Marriage will be presumed to exist between a man and woman who have openly cohabited and consorted together under circumstances which will justify the presumption, in the absence of any counter presumption or satisfactory evidence to the contrary.

2. Marriage—Husband and Wife—Presumption of Marriage.—Where a man and woman have lived together continuously for more than fifty years, have raised a large family of children, who claimed to have been married in another state, and who had been during that time recognized and treated as husband and wife, will be presumed to have been married in the absence of satisfactory evidence to the contrary.

J. R. LLEWELLYN and WILLIAMS & JOHNSON for appellant.

A. W. BAKER for appellees.

OPINION OF THE COURT BY JUDGE TURNER.—Affirming.

On the 9th day of January, 1892, Emeline B. Gardner executed a deed by which she conveyed to John F. Hubbard a small tract of land in Jackson County. Robert Gardner, who had for many years lived with Emeline Gardner as her husband, did not join with her in this deed.

Thereafter, appellee, Baker, recovered a judgment against Emeline Gardner, and treating the conveyance by her to Hubbard as void, had his execution issued, levied on the land and sold, and at the sale became the purchaser, and now claims under this execution sale.

The appellant is claiming title under the deed from Emeline Gardner to Hubbard, and the only question in the case is whether at the time of the execution of the deed to Hubbard, Robert Gardner was the husband of Emeline Gardner, for if he was, her deed to Hubbard was void, and if he was not, her conveyance was valid, and Baker acquired nothing by the subsequent execution sale.

Hubbard was the son of Emeline Gardner, but it is not clear from the record whether he was an illegitimate son, or her child by a former marriage. In an effort to uphold the conveyance of his mother to him, he testifies that when he was about five years of age his mother and

Robert Gardner began illicit relations in Kenton County, Kentucky; that they continued such relations thereafter when they moved to Ohio and Indiana, and when they moved back to Kentucky; that they had never in fact been married. On the other hand it is shown that these two old people had lived together as husband and wife since about the year 1860, or earlier; that they each had held themselves out as husband and wife in the communities where they lived; that they had raised a large family of children; that they had claimed they were married by a ceremony performed in 1860 at Cincinnati; that they were recognized in the communities where they resided as husband and wife; that they were devout Christian people, and were recognized by their church associates as husband and wife, and in all respects were considered and treated by their neighbors as such.

There is a great deal said in the briefs about common law marriages in Kentucky, and about the recognition of common law marriages in other states by the courts of this State; but in our view of this case the only real question is whether after this long lapse of years this weak, unsatisfactory testimony of an interested witness testifying about transactions which occurred when he was an infant only five years of age is sufficient to overcome the presumption of marriage which arises because of the long, uninterrupted cohabitation of the old people, the raising of a family by them, and the recognition of them by their friends and neighbors as husband and wife during this long period.

There is evidence in the record that the old people claimed to have been married in Cincinnati in September, 1860, but there is no competent record evidence of such marriage, although there appears in the record a certificate of a probate judge or justice from Cincinnati to the effect that in 1884 the court house in Cincinnati was burned and many of the marriage records destroyed.

How far the presumption of marriage will be indulged by the courts when men and women cohabit together, in the absence of direct evidence of marriage, has been frequently considered in the courts of this State as applied to the presumption of legitimacy of children; but in this case there is no question of legitimacy raised. We think, however, that the same general rule of law must control, although the presumption might not be so freely indulged where no question of legitimacy arises.

We have here an old couple who have lived together constantly for more than fifty years; who have in that time raised a large family of children; who claimed to have been married in another state, although there is no record evidence of such marriage; who had been constantly during that time recognized and treated by their neighbors as husband and wife; who throughout that period in all their social and commercial activities have been recognized as man and wife. To permit, under these circumstances, weak, flimsy and unsatisfactory testimony of an interested witness to overcome the presumption which necessarily arises from these conditions, would be a dangerous precedent.

Bishop on Marriage, Divorce and Separation, vol. 1, sec. 959, under the general title of "Evidence of Marriage," thus states the rule which must control this case, to-wit:

"Persons dwelling together in apparent matrimony are presumed, in the absence of any counter presumption or evidence special to the case, to be in fact married. The reason is that such is the common order of society, and that if the parties were not what they thus hold themselves out as being, they would be living in the constant violation of decency and of law. And because marriage is the highest public interest, this presumption is stronger and less easily overthrown than the other and ordinary presumptions of fact."

Likewise Keezer on Marriage and Divorce, section 44, distinctly recognizes this doctrine in the following language:

"In the absence of any charge of criminal intent, as in the case of bigamy, marriage may be presumed to exist as a fact between a man and woman, who have openly cohabited and consorted together, under circumstances which would justify the presumption. This presumption of fact is based upon the various presumptions of law in favor of innocence rather than guilt, of regularity in a ceremony rather than irregularity, and a general presumption of marriage."

See also Caldwell v. Williams, 118 S. W., 923; Klenke v. Noonan, 118 Ky., 436, and 26 Cyc., 840.

This presumption of fact arising from long cohabitation and recognition has not been overcome by the evidence in this case.

The judgment is affirmed.