## Adkins v. Bently, et al.

(Decided November 8, 1917.)

## Appeal from Pike Circuit Court.

1. Appeal and Error—Finding of Chancellor.—If on appeal the proof creates a doubt as to the truth of the issue in the mind of the appellate court, such doubt will be resolved in favor of the chancellor's finding, but where such finding is against the preponderance of the testimony, the appellate court is authorized, and it is its duty, to disregard the finding of the chancellor and to determine the issue according to the truth of the matter.

2. Infants—Cancellation of Instruments.—In this suit, brought by plaintiff to cancel a deed executed during infancy, and in which the defense is a denial that the plaintiff was an infant and relied upon her illegitimacy and therefore incapacity to inherit the land from her father, evidence examined on both issues and held to be sufficient to show that the plaintiff was an infant at the time she executed the deed, and that she was also the legitimate child of her father and could and did inherit the land from him.

3. Evidence—A party may not object to incompetent testimony which he himself offers and introduced.

4. Infants—Cancellation of Instruments—Estoppel.—A judgment alleged to have been rendered in a proceeding to divide land in which plaintiff was interested was relied upon in bar of plaintiff's right to claim any interest in the land, the judgment allotting the land to her vendee, the defendant. The plaintiff denied the existence of any such proceeding, or, if any, that she was a party thereto, and insists that if she was nominally a party plaintiff that she was made such without her authority, knowledge or consent. She supported her claim by her testimony, and there was none to the contrary; neither were any of the proceedings, except the supposed judgment rendered therein, introduced upon the trial, and the supposed judgment expressly reserves the question as to plaintiff's right in the premises, growing out of the fact that she was an infant when she attempted to convey her interest. Held that under the circumstances she is not estopped by the judgment to maintain her suit for a cancellation of the deed, because of her infancy.

J. M. BOWLING and JAMES M. ROBERSON for appellant.

CHILDERS & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, Calestine Adkins (nee Moore), brought this suit against appellees, A. W. Childers and Thomas Bently (defendants below), to cancel two deeds to a one-sixth undivided interest in a

tract of land in Pike county, containing 391 acres, and to recover from them $125.00 rents and $250.00 for timber sold from the land since her deed was executed. One of the deeds was made by plaintiff to the defendant Bently on November 1, 1902, and the other was made by Bently and wife to the defendant Childers on the 17th day of February, 1905.

The grounds for the relief sought are (1) that at the time plaintiff executed her deed of November 1, 1902, to the defendant Bently, she was an infant not quite 19 years of age; and (2) that she was induced to execute it through threats, intimidation and fraud on the part of Bently.

The defense jointly made is a denial of the allegations of the petition, and the plea that plaintiff is estopped to maintain the action because of alleged representations on her part that she was at the time 21 years of age, and, further, that in 1904 there was a judgment rendered in a suit then pending in the Pike circuit court brought for the purpose of dividing the land of Jackson Moore, who was the father of plaintiff, among his heirs, and that she was a party plaintiff in that suit and is bound by the judgment rendered therein. The further defense was made that the plaintiff was an illegitimate child and that she did not therefore inherit any of the land of which her father died seized.

The plaintiff by her reply denied all the affirmative allegations of the answer, including the pendency of any division suit, or that she was a party thereto, or, if her name appeared as a party to any such suit in the capacity of plaintiff, that same was done without her knowledge or authority, and that she was not bound by any judgment which may have been rendered therein. Upon final submission the plaintiff's petition was dismissed, and from that judgment she prosecutes this appeal.

But four questions are discussed by counsel for either side in presenting their contentions upon this appeal, and each of them may be classed as one of fact, only. They are, (1) as to the age of plaintiff at the time she executed the deed; (2) whether the facts and circumstances, including any representations which she may have then made estop her from maintaining this action; (3) whether she is barred from inheriting from her father because of illegitimacy; and (4) whether there had ever been a suit for the division of Jackson Moore's land in which plaintiff was a party, and if so, is she bound

by that judgment if its terms are adverse to her present contention?

According to our view, obtained from the record as presented in this court, the principal question is the one concerning the age of plaintiff when she executed the deed to Bently. Before considering any of. the above questions it should be stated that Jackson Moore, the father of plaintiff, was adjudged a lunatic in 1892, and from that time until his death, on October 1, 1902, was an inmate of the Eastern Kentucky Insane Asylum at Lexington, Kentucky. A short while after the father's death plaintiff's mother died, she having resided upon the tract of land in question from the time of her husband's confinement in the asylum until her death.

The plaintiff, at the age of 17, having had a poor chance in life, married her present husband, Adkins, and moved from Pike county, Kentucky, over into Wise county, Virginia, a distance of about forty miles from the land, and the proof shows that she had made but one or perhaps two visits to Kentucky after her marriage. Her mother did not bear the best reputation. at the time she married plaintiff's father. The plaintiff seems to have been afforded but small opportunity for obtaining an education. In the language of some of the witnesses, she and the other children of Jackson Moore, after the latter's confinement in the asylum, "scattered about" amongst relatives in the neighborhood, or with any charitably disposed persons who would give them even a temporary home.

Turning now to the issues, the plaintiff testified that she was born, according to the information which she received from her parents, especially her mother, on December 24, 1883. Her half-brother, many years her senior, and who appears to be an intelligent witness, substantiates her testimony on this point. "Aunt" Sally Ann Vanover was a midwife in that vicinity, who attended. plaintiff's mother at the time of her birth, and she is positive that plaintiff was born just before Christmas in 1883; that the birth occurred during the night, which she remembers distinctly (and from which she was not shaken on cross-examination), even going to the extent of telling the name of the person who came after her. This old lady has a son much older than plaintiff, who substantiates the testimony of his mother and narrates a circumstance calculated to fix the date accurately in his mind. This is found in the witness' answer to a question when he says;

"She was born about the last of 1883 or the first of 1884; it was in cold weather. I was married the first time on the 12th day of July, 1883; that fall I got me out a set of house logs; in January, 1884, I went there and invited Jack Moore to help me raise my house, and I saw Polly (plaintiff's mother) there with the kid in her arms, and they told me it was just about two or three weeks old."

Some four or five other witnesses give similar testimony more or less persuasive, and all of this testimony is supplemented by the school census reports made in 1895, 1896 and 1897 by the defendant Childers, who was a trustee of the school district in which plaintiff's mother resided. On these reports the age of plaintiff is given as being 12 years in 1895, 13 years in 1896, and 14 years in 1897. That such reports are competent evidence upon this character of issue was held by this court in the case of Asher v. Bennett, 143 Ky. 361.

The strongest opposing testimony which defendants introduce was that of a sister of plaintiff's father, who testified to having carried plaintiff as a child on a certain trip across the mountains at a time when she must have been two or three years old in 1883; but the witness upon cross-examination shows that her recollection is exceedingly faulty, not even remembering the ages of her own children, and she furthermore appears to have entertained .animosity toward plaintiff.'s father, perhaps growing out of the fact that he married plaintiff's mother. Other witnesses, some four or five in number, testify to having lived in the neighborhood and saw plaintiff as a child and gave it as their opinion that she is older than she claims to be. Some of these witnesses say that they have children who are two or three years older than plaintiff claims to be and that the latter was as large, when a small girl, as the children of the witnesses. But, like the witness Kelly, some of them show some bitterness in their testimony as well as very faulty recollections. Even if their testimony was not impaired by any such circumstances, we are unable to conclude that it is sufficient to overcome the almost positively convincing testimony introduced on behalf of the plaintiff.

We are aware of the rule concerning the weight which this court will give to the judgment of a chancellor upon an issue of fact to the effect that if the entire proof creates only a doubt as to the truth that doubt should be resolved in favor of the chancellor's finding. In this case, however, the testimony leaves no doubt in our

minds as to the plaintiff's age or as to the year in which she was born. We think the finding of the chancellor on this issue was against the preponderance of the evidence, and in such cases it is our duty to find the fact according to the proof. We therefore conclude that plaintiff was not 21 years of age at the time she executed the deed in question.

Upon the (2) question urged by defendants that plaintiff's statements and representations about her age made by her at the time of the execution of the deed estop her from maintaining this action, but little need be said. The overwhelming weight of the testimony is that instead of making such representations the plaintiff at the time insisted that she could not legally execute the deed because she was a minor, and the justice of the peace before whom the acknowledgment was first (but mistakenly) made hesitated about taking it because of the plaintiff's minority. Some four or five witnesses besides plaintiff establish the statements just made, and only the defendant Bently and another witness whom the record shows to be extremely partisan on behalf of defendants contradict this proof. Moreover, defendant, in his anxiety to have plaintiff sign the deed, gave her five dollars in cash in addition to the 13-year-old cow which he had promised her as full consideration, in order to induce her to sign the deed, and he himself went in the night time to notify an officer about taking the acknowledgment. In addition, when he sold the land to Childers, more than two years afterward, he discussed his possibly defective title and said, "Now I am out of it and you are in it," or this in substance. There can be no doubt in our minds that plaintiff neither by actions nor by words was guilty of any act whereby she could be estopped.

On the (3) proposition, that of plaintiff's illegitimacy, there is an equal paucity, if not an entire failure, of testimony. Polly Moore, before her marriage to plaintiff's father, had been the wife of one Adams, from whom she was divorced by a judgment of the Pike circuit court on April 25, 1882, as shown by a duly certified copy of the judgment found in the record. She married Jackson Moore on February 23, 1883, in the state of Virginia. This fact is proven by a copy of the record showing the issuance of the marriage license and the return of the minister who performed the ceremony thereon, as certified to by the clerk having such records in charge. The

lower court, however, declined to admit this paper because it was not certified as a foreign record is required to be done. The ruling of the court would have been correct but for the fact that defendants themselves introduced the certificate and filed it as an exhibit with the deposition of the defendant Childers, and under all rules of law as well as fairness they are not now in an attitude to insist upon its incompetency.

Moreover, the proof is unanimous that from a short while after plaintiff's mother separated and was divorced from her former husband up to the time of the confinement of Jackson Moore in the asylum they lived together in that community as husband and wife, and were recognized by everybody as sustaining that relation to each other, and the fact of their marriage was generally accepted as being true. These facts, under the rule announced in the case of Rockcastle Mining, Lumber & Oil Company v. Baker, 167 Ky. 66, and authorities therein referred to, raise a presumption of a legal marriage which has not been overcome by any proof in this case. We have no hesitancy in concluding that the marriage of plaintiff's father to her mother is clearly established, at least sufficiently so to relieve plaintiff of the odium and disabilities of illegitimacy.

Looking now to the (4) contention, which relates to the judgment pleaded in bar of plaintiff's right to maintain this suit, we find that the pleadings put in issue the pendency of any such suit or that plaintiff was ever a party thereto, and in addition stated that if there had been one and her name appeared as a plaintiff it was without her knowledge, consent or authority. With the issue thus made, the record is wholly silent as to whether there had ever been such a suit filed. No pleadings or orders purporting to be a part of any such alleged suit were in any manner introduced except what purports to be a judgment of division. This, however, is not sufficient to establish the fact that plaintiff was a party to that suit. The paper purporting to be a judgment is styled "Standford Moore, &c., v. Thomas Bently," and commences: "By consent the following judgment is rendered in this case." As stated, the plaintiff is neither shown to have been a party to that suit nor to have been consulted concerning any judgment which may have been rendered therein, nor in any manner consented thereto. Beyond all this, it is recited in that document that "The question as to whether or not the plaintiff, Calestine Adkins, was an infant at the time of the al-

leged sale by her to the defendant, Thomas Bently, is not determined, and the question as to her title to said land is not adjudicated; nothing but the division of said land is now determined."

So that, conceding the proceeding in which that judgment was rendered to have been instituted, and properly so, and further, that the plaintiff was a party thereto, the fact in issue in the instant case was expressly reserved and no adjudication made of it. Clearly, then, this fourth contention made by the defendants cannot be upheld.

The testimony, according to our minds, is amply sufficient to show that the defendant Childers knew at the time he purchased the land from his co-defendant, Bently, the circumstances under which the latter's deed from plaintiff was obtained, and that she was an infant at the time. Not only does the conversation which Bently had with him, and which he does not deny, conduce to prove these facts, but, as we have shown, he was the one who took the census of the school children, and upon which the age of plaintiff appears. The proof therefore does not show him to be an innocent purchaser.

There appears to have been valuable timber upon the land at the time plaintiff executed the deed to Bently, and we gather that some of this has been removed, but testimony as to the value of any timber which may have been removed is wholly lacking. The same is true as to the value of the rents which plaintiff includes in her petition. We know as a matter of fact that the use of the land was worth something, but as to how much the record is entirely silent. Whatever may be the rule relating to the restoring, or accounting for the consideration paid to an infant upon cancellation of its deed, we are convinced that in this case the timber removed and the value of the use of the land will far exceed the five dollars plus the value of the 13-year-old cow, then fixed at $20.00, constituting the entire consideration paid by Bently to plaintiff in consideration for the deed.

We have not discussed the issue made by plaintiff as to the fraud practiced upon her by Bently, because of which she was induced to execute the deed, for the reason that the conclusion which we have reached renders such discussion unnecessary.

For the reasons indicated, the judgment is reversed, with directions to cancel the deed executed by plaintiff

to the defendant Bently, and the one executed by her to her brother, Sandford Moore (as that one is affected by the same vice), and also the one executed by Bently to the defendant Childers on February 17, 1905, in so far as they attempted to convey plaintiff's interest in the 391 acres of land owned by her father at his death, and to adjudge the plaintiff the owner of such interest, and for further proceedings consistent with this opinion.