## Scott v. Scott.

(Decided June 22, 1923.)

## Appeal from Hart Circuit Court.

1. Evidence—English Common Law is Presumed to Prevail in Another State.—In a suit for divorce, where defendant denied the marriage, which plaintiff claimed was consummated in another state, the presumption is, in the absence of proof of the laws of that state, that the English common law prevailed therein at the time.

2. Marriage—No Ceremony was Required at Common Law.—At common law no ceremony was necessary to the validation of a marriage, but it was sufficient if there was an agreement of the parties to accept each other as spouse and the agreement was carried into execution.

3. Marriage—Declarations by Both Parties they were Married Warrants Presumption of Ceremonial Marriage.—Proof that both parties to an alleged marriage had acknowledged and declared that they were married to each other warrants the presumption under the law of Kentucky that the marriage so admitted was ceremonial and regular in all respects.

4. Marriage—May be Proved as Other Facts.—Marriage is a fact which may be proved as other facts.

5. Marriage—Evidence of Declarations Held to Establish Presumption of Marriage Denied by Defendant.—In an action for divorce, where defendant denied the marriage, evidence that defendant had stated to others that he and plaintiff were married and had written numerous letters to her admitting the marriage, but requesting her to keep it secret, held sufficient to warrant the presumption there was a valid marriage in the absence of a contrary showing, and the court will not stop to inquire whether such marriage was ceremonial.

6. Marriage—Law Presumes those who Hold Themselves out as Husband and Wife have been Married.—The law regards those as married, in the absence of a contrary showing, who hold themselves out by their words and conduct as man and wife.

7. Divorce—Award of $5,000.00 as Alimony and $750.00 Attorney Fees Held Reasonable.—In a suit for divorce, where the evidence was ample to sustain a finding of the husband's cruelty to his wife, and it appeared his estate amounted to between $20,000.00 and $30,000.00, while the wife was penniless, a decree awarding to the wife $5,000.00 as permanent alimony and $750.00 attorney fees was reasonable.

O'REAR, FOWLER & WALLACE, C. B. LARIMORE, SIMS, RODES & SIMS and H. L. JAMES for appellant.

WATKINS & CARDEN and W. E. JONES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming.

While this is a divorce suit the appellant insists that
he was never married to appellee. She asserts that they
were married in Nashville, Tennessee, in January, 1911,
and that thereafter at intervals lived together as hus-
band and wife until he finally abandoned her and de-
clared he never had been married to her. Her grounds
for divorce are cruel and inhuman treatment. If they
were married as claimed by her, the evidence was suf-
ficient to have warranted the chancellor in granting the
divorce and in awarding alimony.

The principal if not the only question of importance
in this case is whether or not the parties were married.
If they were not, then of course appellee has no right
to divorce or to alimony, nor has she any cause of action
against appellant.

As the marriage was consumated in the state of
Tennessee, and the laws of that state are not proven, the
presumption is that the English common law with respect
to marriage prevailed at the time in that Commonwealth.
At common law no ceremony was necessary to the valida-
tion of a marriage. All that was necessary was an agree-
ment of the parties to accept each other as spouse and to
carry the agreement into execution. This was done by
both appellant and appellee in this case. From the evi-
dence both parties acknowledged and declared that they
were married to each other. The presumption to be
drawn from such facts, when considered in the light of
the law of this state, is that the marriage which they ad-
mit took place was ceremonial and regular in all respects.

We have examined the evidence in this case with
great care, and while it is rather voluminous, some of
it is very entertaining, especially the love letters written
regularly by appellant to appellee through a period of
many months. Part of the letters antedated appellant's
election to the senate, some were written while he was
in the state senate at Frankfort and others after he re-
tired from the senate. Most of these billet-doux were
written in answer to those sent to him by appellee, and
prove beyond a shadow of a doubt that he and appellee
had entered into a marriage relation which must be pre-
sumed, as we have said, to have been ceremonial. He
acknowledged their marriage over and over in his let-

ters, calling her "wife" and swearing his allegiance and undying love for her. These letters are so numerous that it would be extending this opinion beyond reasonable length to copy them or any considerable part of them, and for this reason, as well as for the further reason that they would serve no good purpose, we omit them. In most of these letters, when referring to their marriage or to their having been married, he was asking her to keep it a secret, and in order to induce her to do this he gave her many reasons, some of them plausible and others not so. He was afraid, so he told her in letters, that if their marriage became public it would destroy his political chances. At another time he said it would hurt him in business, and another that he could not close a land deal which he had on if it were made known, and yet another that he had a libel suit which he wanted tried out before the announcement of their wedding. She consented to keeping the marriage a secret for a time although she would constantly insist upon it being announced and made public. He went to see her very frequently and stayed with her more or less. After she became pregnant he sent her to Illinois to stay with her sister and brother-in-law. While she was there he went to see her one or more times. He told her sister and brother-in-law about their marriage and acted in their home as though he were the husband of appellee. At night when it came time to go to bed he and she were assigned by her sister to the same room and bed in the home. He called her wife and she claimed him as her husband. In addition to this he supported her and took care of her and provided her with money and other things. As long as she remained out of the state he contributed to her support, but when she came home against his protest he refused to have anything more to do with her and began to deny that he had married her, and denied that he had ever admitted that he had married her.

Marriage is a fact which may be proven as other facts. Caldwell v. Williams, 118 S. W. 932; Bartee v. Edmonds, 29 R. 872.

Appellee testified and now insists that she was married to appellant in Nashville, Tennessee, in January, 1911, when they made a trip there for that purpose. More potent than all her testimony are the love letters of appellant acknowledging over and over his marriage to her. He admits he wrote the letters. When both parties to an alleged marriage acknowledge it why should the court

look elsewhere for evidence or inquire in a case of this character whether there was a ceremonial or ritualistic marriage? It will be presumed in the absence of a contrary showing. No other presumption can be indulged.

According to her statement they lived together a short time while they were in Nashville and at other times throughout their wedded life, and that she did at his earnest solicitation keep the wedding a secret although it was against her will and desire to do so.

He did not produce any of her letters upon the trial, saying he had lost or destroyed them, but his letters written to her and produced upon the trial show that she was writing him frequently and insisting upon announcing the marriage. Having acknowledged his marriage to appellee in various letters and having admitted in his testimony that he had been with her and lived with her as his wife for short periods at a time, he will not now be permitted to cast her off and say that he did not marry her but deceived her into a false marriage, or that he was living with her in concubinage. The law regards those as married, in the absence of a contrary showing, who hold themselves out by their words and conduct as man and wife. This is a part of the public policy of the state, and concubinage will never be recognized except where the facts affirmatively show it.

For this and many other reasons not necessary to state we must hold that appellant and appellee were married in January, 1911, as testified to by her. As already stated his cruel and inhuman treatment of her as his wife has been such as to entitle her to an absolute divorce.

The chancellor not only decreed an absolute divorce but allowed her $5,000.00 permanent alimony and $750.00 attorney fees and cost. Of this appellant complains. His estate is shown to be something around $20,000.00 to $30,000.00, while she is penniless. His treatment of her has been unusually cruel and he has been guilty of such inhuman treatment towards her as to entitle her to alimony. We refrain from reciting the facts. It will be sufficient to say that they abundantly support the finding of the chancellor. The sum fixed by the chancellor appears to us to be reasonable under all the facts and circumstances of this case.

We do not deem it necessary to discuss the other questions made.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.