# Maryland Casualty Company, et al. v. Chamos (Cosmos), et al.

(Decided June 20, 1924.)

## Appeal from Pike Circuit Court.

1.  Evidence—Marriage—Marriage and Birth of Children May be Shown by Parol Testimony.—Fact of marriage and birth of children may be shown by parol testimony given by persons who had actual knowledge.

2.  Constitutional Law—Master and Servant—Statute Providing Half Compensation to Nonresident Alien Dependents Constitutional.— Ky. Stats., section 4903, providing for only half compensation to nonresident alien dependents of servant, does not violate any of provisions of Const. U. S. Amend. 14, which relates to citizens and persons subject to jurisdiction of the United States or state.

3.  Statutes—Statute Providing Half Compensation for Nonresident Alien Dependents Not Invalid as Special Law.—Ky. Stats., section 4903, providing that only half compensation be paid to nonresident alien dependents of servant, is not invalid under Constitution, section 59, subsection 29, as a special law, where a general one could be made applicable.

4.  Treaties—Treaty Guaranties Prevail Over Statutes.—Treaty guaranties prevail over statutes.

5.  War—Compensation Award to Nonresident Alien Dependents' Properly Ordered Paid to Alien Property Custodian.—Award of compensation for death of unnaturalized native of Hungary was properly ordered paid to alien property custodian pending necessary legislation contemplated in section 5 of Treaty of Peace with Hungary (42 Stat. 1952), and circuit court erred in ordering payments to be paid to its master commissioner as quasi receiver.

HARMAN, FRANCIS & HOBSON for appellants.

G. R. BLACKBURN, JR., and J. C. CANTRELL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on both the original and cross appeals.

Andrew Chamos, an unnaturalized native of Hungary, was on March 6, 1918, employed by the Sudduth Coal Company as a workman in its coal mine in Pike county, Kentucky, and on that day he sustained an accident in the course of his employment from the effects of which he died. The employer was operating under our Workmen's Compensation Act (sections 4880-4987, both inclusive, of 1922 edition, Kentucky Statutes) and it was insured under that act by appellant, Maryland

Casualty Company, and Chamos, before the accident resulting in his death, had accepted the provisions of the act. Appellees, Rosalia B. Chamos, claiming to be the widow of Andrew Chamos, and Rosy and Maria Chamos, claiming to be his infant dependent children, filed their claim with the Workmen's Compensation Board to obtain compensation thereunder for the death of the husband of the former and the father of the two latter. The alleged dependents were never in this country, and according to the record, they were prior to, and at the time of the accident and continuously since then, citizens and residents of Hungary, and were and are, therefore, non-resident aliens. The board found that they were dependents of the deceased, Andrew Chamos, and awarded them under the provisions of section 4903 of the statutes (sec. 22 of the act) only one-half of the amount provided in the act for the death of resident employees. They petitioned the Pike circuit court to review that finding and to direct the board to award them the full amount provided by the statute upon the ground that section 4903 was unconstitutional. The coal company and the Maryland Casualty Company also sought a review of the award in the circuit court upon the ground that the claimants had not proven themselves to be dependents of the deceased, and because thereof they were entitled to no award.

In the meantime the National Custodian of alien property intervened in the cause and asked that whatever sum was awarded be paid to him, while another resident Hungarian, who was a friend of the deceased, made a similar request of the court upon the ground that the dependents, Mrs. Chamos and her two infant children, had duly authorized and empowered him to collect the compensation. All those questions were heard upon the trial in the circuit court and it found and adjudged that the claimants were dependents of the deceased; that they were nonresident aliens, but that notwithstanding that fact it also held that the section of the statute (4903), allowing only half compensation "to alien dependent widows and children, not residents of the United States," was unconstitutional and adjudged that they were entitled to full compensation as provided in the act for the death of an employee. The court did not determine the one to whom the compensation should be paid but reserved that question for future adjudication and in the meantime directed it paid to the master com-

missioner of the court as a sort of receiver until it should be determined who was entitled to receive and receipt for it. From that judgment the casualty company and the coal company prosecute this appeal, and there are cross-appeals from the court's ruling upon the question as to the one to whom the award should be paid.

The first question on the appeal is whether the evidence was sufficient to show that the claimants were dependents on the deceased employee and as such entitled to the award provided by the statute. In proof of their claim as such dependents they introduced certain copies of Hungarian public records showing the marriage of deceased to appellee, Rosalia B. Chamos, and the births of the other two claimants, Rosy and Maria Chamos. But it is contended that those records were not properly certified or authenticated so as to be competent evidence of the facts they contain. We do not, however, regard it as necessary to the disposition of the case to determine that question, since there was proof by one or more eyewitnesses, who were native Hungarians and who had known the deceased for a great number of years and lived in his immediate vicinity in Hungary, that he was duly married to the appellee, Rosalia B. Chamos, and that afterwards the two other claimants were born as a result of that marriage and while the parties were living together as husband and wife, and that the widow was still unmarried and both she and her two daughters resided in the foreign country. In the cases of Faustre v. Commonwealth, 92 Ky. 34, and Scott v. Scott, 200 Ky. 153, it was held that the fact of marriage might be proven by parol testimony given by persons who had actual knowledge of the fact, and the same reason for the admission of such testimony to prove that fact would also prevail to establish the fact of birth, since there is no difference in principle between the two issues. We, therefore, conclude that the court properly found appellees to be nonresident alien dependents and entitled to recover the award provided by the statute in their favor.

Counsel for appellees strenuously insist that section 4903, *supra,* is unconstitutional as repugnant to section 1 of the Fourteenth Amendment to the Constitution of the United States, saying: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Other grounds are urged both in the pleading and brief of counsel as rendering the section unconstitutional, but all of which, except one, are referable to the amendment *supra* and need not be separately considered. The excepted one is that the section violates subsection 29 of section 59 of our Constitution because it is claimed that it is a special law enacted where a general one could be made applicable, and, therefore, repugnant to that subsection. But that contention is so glaringly erroneous as to require no discussion from us to point out its error, and we will content ourselves in disposing of that argument by simply saying that it is wholly without merit; which leaves for consideration only the question as to whether the attacked section of the Workmen's Compensation Act violates any of the provisions of section 1 of the Fourteenth Amendment *supra* of the Federal Constitution.

To begin with it readily will be seen that appellees are not citizens of the United States under that section of the amendment, since they were neither born here nor are they naturalized; neither are they subject to the jurisdiction of either the United States, or of this or any other state. Therefore, according to the express terms of the amendment there exists no inhibition against any state making or enforcing any law abridging any supposed privileges or immunities of appellees, since the power in the state to do so is therein withheld only as to "citizens of the United States." Neither is the provision therein that "nor deny to any person within its jurisdiction the equal protection of the laws" applicable to the facts in this case, since appellees have never been within the jurisdiction of this Commonwealth. If they were corporeally here and thereby properly classified as resident aliens then the last quoted language might be invoked by them if the rights sought to be enforced were of such a nature as to entitle them to rely on that provision; and the same is true with reference to the other provision that "nor shall any state deprive any person of life, liberty or property, without due process of law." But, before that provision may be invoked against the validity of the laws of a state it must appear that the one relying thereon is about to be

deprived of his life, liberty or property. Workmen's compensation acts are held to be founded in the public policy of the state or country enacting them, and primarily the public policy purpose is, to provide a means by which the resident dependents of a deceased employee may be maintained without becoming a burden upon the public treasury; and which is somewhat analogous to that underlying exemption statutes. If, therefore, the dependents could not become a burden upon the public because of their nonresident alienage, it necessarily follows that it was competent for the legislature to withhold from such class the benefits of the statute, which principle of law is thoroughly settled by both text writers and opinions of courts of last resort.

As to the right of a state to extend the benefit of its exemption laws to only residents therein without violating the provisions of the Federal Constitution here relied on, see Cooley's Constitutional Limitations, seventh edition, top page 574. The text in 2 Corpus Juris, 1046, in discussing the rights of aliens under the federal constitutional provisions here relied on, says: *"Resident alien friends have practically all and the same rights and privileges as citizens, and are entitled to the benefit of the provision of the Federal Constitution that no state shall deprive 'any person' of life, liberty or property without due process of law, or deny to 'any person' the equal protection of the law."* (Our italics). But, on the following page, in speaking of the rights of *nonresident* aliens, it is said: "Nonresident aliens are entitled to such rights and privilege as may be expressly conferred, but no duties may be imposed upon them." In 12 Corpus Juris, 1142, it is pointed out that the "equal protection" guaranty in the section of the amendment, *supra,* may be invoked only by aliens *within the jurisdiction* of the sovereignty or authority whose laws are attacked; and that physical and corporeal presence within the jurisdiction is necessary in order to obtain the benefit of the guaranty. Many cases supporting the text are cited in note 77 thereto, one of which is Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. R. 1064, 30 L. Ed. 220. So that, the "equal protection" guaranty of the Federal Constitution may not be invoked for the benefit of the dependent appellees herein, if for no other reason than that they are not only aliens, but they are also *nonresident* aliens and are not subject to or within the jurisdiction of Kentucky.

A late opinion by the Supreme Court of the United States on the subjects herein discussed is found in the case of Terrace v. Thompson, 68 Law Ed. 35. The court there had under consideration the constitutionality of a statute of the state of Washington forbidding the ownership of lands therein by aliens (unless the title was acquired in certain ways not affecting the question here), and the validity of the statute was upheld, and in the course of the opinion the rights of aliens under the amendment of the Federal Constitution here invoked are elaborately discussed. Concerning the scope of the ''due process'' clause the opinion said: ''State legislation applying alike to all aliens, withholding from them the right to own land, can not be said to be capricious, or to amount to an arbitrary deprivation of property, or to transgress the due process clause.'' And commenting on the ''equal protection'' guaranty in the same amendment the opinion said: ''This brings us to a consideration of appellants' contention that the act contravenes the equal protection clause. That clause secures equal protection to all in the enjoyment of their rights under like circumstances. Re Kemmler, 136 U. S. 436, 449, 34 L. Ed. 519, 524, 10 Sup. Ct. Rep. 930; Giozza v. Tiernan, 148 U. S. 657, 662, 37 L. Ed. 599, 601, 12 Sup. Ct. Rep. 721. But this does not forbid every distinction in the law of a state between citizens and aliens resident therein. . . . The rights, privileges, and duties of aliens differ widely from those of citizens; and those of alien declarants differ substantially from those of nondeclarants.''

Coming now to a brief consideration of the specific application of the principles discussed to alleged discriminations against aliens in workmen's compensation acts, we find that wherever such discriminations are attempted to be made in those acts, or where alien dependents in case of the death of the employee, especially if they are nonresident aliens, are wholly excluded from the benefits of the act, such discriminations or exclusions have everywhere been upheld except in the single instance of the Kansas case of Vietti v. Geo. K. Mackie Fuel Co., 197 Pac. 881; and in that case it was unnecessary to decide the point, since the applicant was a native of a country between which and the United States there existed a treaty whose language was broad enough to guarantee to him the same privileges as extended to citizens of the United States, under which circumstances it

is universally held that the treaty guarantee prevails over the statute. Cases so upholding partial or total exclusion from the benefits of workmen's compensation acts, in the absence of treaty prohibitions, may be found in the annotations to the case of Re McDonald, reported in 1918 F. L. R. A. 443, annotations on page 496. See also vol. 1 Schneider on the Law of Workmen's Compensation, section 375, and Zancanelli v. Central Coal Co., 25 Wyo. 511, 173 Pac. 981; Ponca v. DeGraves, 38 N. J. L. J. 56; Gregrutis v. Waclark Wire Works, 86 N. J. L. 610, 92 Atl. 354.

We have so far discussed the question without reference to the right of a state to provide for the classification of persons who are entitled to the benefits of a statute. The cited cases uphold such right when the classifications are not arbitrary and they also say that the classification of aliens and citizens in the extension of such privileges is not an arbitrary one and will be upheld, especially so when the alien classification refers only to nonresident aliens, such as are appellees here. It is, therefore, our conclusion, without further extension of the discussion, that the court erred in holding section 4903, which is a part of our Workmen's Compensation Act, unconstitutional; and as a consequence erred when it adjudged that appellees were entitled to full compensation instead of half compensation as provided by that section.

The questions raised on the cross-appeals may be briefly disposed of. As we construe the two petitions filed in the circuit court for a review of the finding of the compensation board, no objection is made in either of them to that part of the board's award saying: "As the claimants herein are alien dependents, the amount of compensation herein awarded shall be paid to the alien property custodian, and held in trust by him until Congress shall enact the necessary legislation contemplated in section 5 of the treaty of peace with Hungary." But, if we are mistaken on that point, it is our conclusion that the temporary order of the board in so directing the awarded installments to be paid to the alien property custodian until the time designated in the order was and is correct, and that there was nothing shown at the trial in the circuit court to authorize a different ruling. So that in either event we think the circuit court was not authorized to direct such payments to be paid to its master commissioner as a *quasi* receiver in the case.

Wherefore, the judgment on the original appeal is reversed, with directions to dismiss both petitions for a review of the finding of the board, and the order of the circuit court directing payments of installments of the award to the master commissioner of the court is likewise reversed on the cross-appeal; and the court, after complying with the directions herein, will certify the fact to the compensation board, and it will carry out the order and directions contained in its award.