## Elkhorn Coal Corporation v. Tackett et al.

(Decided May 6, 1932.)

E. C. O'REAR and HOWARD & MAYO for appellant.

JOE P. TACKETT and F. P. HALL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In June, 1920, Duvall Tackett was accidentally killed while serving the appellant, Elkhorn Coal Corporation, as an employee in one of its mines in Floyd county, Ky. He left surviving him no dependent except his widow, the appellee Lena Tackett. Both employer and employee were operating under our workmen's compensation statute, and in due time an award, consented to by the parties, was approved by the Compensation Board whereby the widow was to receive, and appellant was to pay to her, the sum of $12 per week for 335 weeks, which it did up to February 10, 1924, a period of 3 years and 20 weeks, leaving of the time through which the payments were to run, 3 years and 23 weeks. No payments have been made since the day of cessation, and they were stopped because appellant concluded that the beneficiary of them had forfeited her right to further receive them by becoming married to Dr. Joseph R. Elliott, a native-born citizen of that community, and who had been practicing his profession therein for a number of years, and whose wife had died some years before.

In due time appellant, the payer of the award, legally applied to the Compensation Board to reopen it, and at the same time sought at its hand an enforceable determi-

nation that the beneficiary of the award (the appellee as surviving widow) had forfeited her right to further collect it for the reason above stated, and as an incident thereto that appellant be released from further payments. The response of appellee thereto put in issue the fact of her marriage to Dr. Elliott, and upon hearing the board determined that issue in her favor and declined to grant appellant the relief sought. Proper proceedings for a review of such action by the board were instituted in the Floyd circuit court, and upon a hearing thereof the findings and determination of the board were affirmed, and appellant's petition for review was dismissed, and from that judgment this appeal is prosecuted.

The only evidence heard in the circuit court was a reproduction of that heard by the board upon a trial of the application made to it by appellant, and it quite conclusively shows these facts: That after a comparatively short time following the death of Duvall Tackett, Dr. Elliott, whose wife had recently died, began to paying his attention to the widow Tackett, and soon thereafter they made a joint trip to foreign states, and were gone some 10 days or 2 weeks. Upon their return they forthwith moved into the residence of Dr. Elliott, and have jointly occupied it continuously since. They stated to a number of persons that while away on their trip they were married, and the doctor told some of the witnesses that the union was entered into in Mingo county, W. Va., although it is made to appear that they also visited other states before their return. They have continuously lived together and demeaned themselves as husband and wife, there being no apparent difference between their relations and those between other men and women in civilized society occupying towards each other acknowledged and undisputed conjugal relations. At customary and usual intervals during such relationship between Dr. Elliott and appellee, children were born, the oldest of whom is about six years of age and named for his father, Dr. Elliott.

The appellee did not testify, but she introduced the doctor, who, from the inception of business relationships between appellant and herself as surviving widow of Duvall Tackett, has represented her by conferring with, if not employing, her counsel, advising with them and actually engaging in the prosecution of all her litigation and adjustment of her business affairs in the same manner as other husbands do for their wives. Dr. Elliott

made a most incredible witness and his character as depicted in the record is an unenviable one, but he did manage to state at least one truth, and which was, "We have been having sexual intercourse all right," and which was an answer made by him to this question:

"Doctor, it is a fact isn't it that you and Lena Tackett have been living together and that you have in all this time we have been speaking about, been living together, as man and wife, having sexual intercourse?"

It will be perceived that the answer is evasive, in that it is in response to only a part of the question, and the witness nowhere in his testimony answered, or denied what was embodied in the remainder of the question, but which, we repeat, was conclusively proven to the extent of what may be termed "beyond a reasonable doubt."

It is true that some of appellee's neighbors were permitted to state that she had said to them, "We are not married," and Dr. Elliott in giving his testimony was asked, "Are you married to Lena Tackett?" to which he answered, "No sir." The proven statement of appellee (the competency of which is, to say the least of it, extremely doubtful), and the quoted answer of Dr. Elliott, is the only testimony in the record to refute the facts to which we have referred, except the doctor stated while giving his testimony that appellee was only a hired servant in his household to whom he paid wages for performing household services in his residence; but he failed to state the amount of the wages so agreed to be paid. any of the terms of the alleged employment, or how such earnings of appellee were paid, except he said that it was done partly by cash and partly by checks, although he could not and did not produce any of the latter. When asked concerning the places and states that he and appellee visited on their trip culminating in such described relationship, he declined to answer.

The order of the board dismissing appellant's application, and which the Floyd circuit court affirmed, recites its finding of facts in substantial conformity with what we have hereinbefore stated; but in applying the law thereto it said:

"The only question to be determined by this board, is whether or not plaintiff is married, and as Kentucky does not recognize 'Common Law Mar-

riage,' as it is frequently put, except under certain conditions, which have not arisen or the record fails to disclose in this case, it is therefore the opinion of the Board that plaintiff is not a married woman and that she is entitled to the compensation heretofore awarded her by this board.''

A part of section 13 of our Workmen's Compensation Act (chapter 33, page 354 of the Acts of 1916, and which is section 4894 of our present Kentucky Statutes) says, ''Compensation to any dependent shall cease at the death or legal or common-law marriage of such dependent,'' and the sole question for determination is whether the above-recited facts are sufficient to authorize an investigating tribunal to find that the recited relations between Dr. Elliott and appellee are to be regarded as effectuating a marriage under the common law preceded by the necessary conjugal and matrimonial agreement to constitute marriage if entered into ceremonially, or only verbally after the fashion of the common law, since under the statute if their relationship originated pursuant to an agreement evidenced in either of the two ways, i. e., (1) a record of a ceremonial consummation, or (2) mutual agreement between the two followed by the assumption of such relationship (and which latter is the essence of a common-law marriage), then the compensation must cease and the one liable therefor become relieved from its further payment, the language being ''legal or common-law marriage.''

The marriage relation is one founded in contract or consent. But unlike ordinary commercial contracts, only persons of opposite sex may enter into it, and but one such contract may exist at the same time, and the contracting parties must be of prescribed age and not related by blood in forbidden degrees, nor is there any limitation for the duration of such contractual relationship, nor can the parties singly or jointly dissolve it. In, perhaps, a majority of the states of this country there exists statutory regulations for the consummation of a marriage contract and the assumption of marriage relations, and which generally, if not universally, require some prescribed ceremonial action by an authorized person, followed by prescribed record entries evidencing the contract. Other states and, perhaps, some of those who have statutes upon the subject, recognize as a valid marriage one entered into according to the

forms of the common law and of which no record is made, but in such cases the marriage is consummated by mutual agreement and consent of the parties, followed by their subsequent acts and conduct as man and wife. It is strenuously argued by learned counsel for appellant that, under the principles announced by this court in the cases of Faustre v. Commonwealth, 92 Ky. 34, 17 S. W. 189, 13 Ky. Law Rep. 347; Adkins v. Bently, 177 Ky. 616, 197 S. W. 1086; Jackson v. Claypool, 179 Ky. 662, 201 S. W. 2, 3; Rockcastle Mining Co. v. Baker, 167 Ky. 66, 179 S. W. 1070; Scott v. Scott, 200 Ky. 153, 252 S. W. 1019; and Maryland Casualty Co. v. Chamos, 203 Ky. 820, 263 S. W. 370, the facts of this case clearly authorize an inference, or a presumption, of a duly-performed ceremonial marriage between appellee and Dr. Elliott as having occurred at some place in some other jurisdiction while they were away from Kentucky on their trip; but whether counsel is or is not correct in that contention, is a question that need not be determined on this appeal, since we are clearly convinced that the facts in the case fully justify and authorize a judicial finding that appellee and Dr. Elliott entered into their relationship under such facts and circumstances as to create a common-law marriage according to the foregoing definition thereof, and which, under the edict of the statute, was and is an express ground for discontinuing the compensation.

But it is insisted that common-law marriages are not recognized in this jurisdiction, and because of that fact alone the board dismissed the application of appellant for an appropriate order or determination for the cessation of payments. It, in substance, found that all of the elements of a common-law marriage were present and proven, but it declined to grant relief for the single reason stated in its order of dismissal. The review court, possibly, entertained the same view, there being no additional reason given for its affirmance of the board's action. It is strenuously argued by counsel for appellee that under an unbroken line of opinions from this court the findings of fact by the board may not be disturbed, where there was some evidence to support it. But the error in that argument is, that in this case the facts that were found by the board support appellant's contention to the effect that appellee and Dr. Elliott had entered into a common-law marriage; but, notwithstanding the board came to that conclusion, it erred in applying the

law to that situation, and our opinions are equally unanimous in holding that the court can review and reverse the conclusions of the board on questions of law, since the rule contended for applies only to findings of fact when based upon any supporting testimony. Among the cases upholding our authority to review the board's ruling on questions of law are the two recent ones of Buchanan Mining Co. v. Henson, 228 Ky. 367, 15 S. W. (2d) 291, and Broadway & Fourth Avenue Realty Co. v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988.

Under the language of our compensation statute, supra, providing for the termination of award payments, it is not essential that a common-law marriage, though consummated within this jurisdiction, should be recognized as a valid one for all purposes, or even any purpose, unless where the assumption of the relationship in that manner is given effect by statute, and which is true under our Workmen's Compensation Act by its express terms, and which are so related to other parts of the statute as to create no ambiguity as to the meaning, intent, and purpose of the Legislature in employing them. That purpose was and is to provide for periodical payments to such dependents as partial compensation for the loss they sustained in being deprived of the support furnished them by the one upon whom they relied for support. But, when such one voluntarily, and in the manner described in the statute, seeks and obtains another supporter, the reason for continuing the provided compensation would no longer exist and it was enacted that he or she should not thereafter receive it.

The duty of courts to indulge the presumption, and to draw the inference, that we have done under the facts of this case, in preference to concluding that the relationship of the nature and character before us (as well as its manner of assumption) was meretricious, is amply sustainable by the declared law as will be found from the text of 18 R. C. L., page 416, sec. 39, and page 428, sec. 57. In the first reference it is said:

> "This presumption of legality of the relationship, is said to be one of the strongest known to the law, especially where the legitimacy of children is involved, for the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy and not bastardy."

In the latter reference, addressed to the same point, it is said:

> "If parties live together ostensibly as man and wife, demeaning themselves toward each other as such, and are received into society and treated by their friends and relations as having and being entitled to that status, the law will, in favor of morality and decency, presume that they have been legally married."

To hold, then, that there was a common-law marriage entered into by the appellee and Dr. Elliott supports the policy of the law favoring morality, decency, and marriage, rather than immorality, indecency, and concubinage. It also admonished affected parties that they may not enter into a common-law marriage and still preserve the right of continued compensation by contending that their relation is meretricious, in the absence of clear and convincing proof.

Considering the facts of this case, in the light of the cited applicable law, appellant's right to discontinue the payments under the terms of the statute granting it, is equally available whether appellee and Dr. Elliott were legally married ceremonially in conformity with some statute, or whether they assumed their relationship in such form and manner as to constitute a common-law marriage. We have no trouble in concluding, with the aid of permissible presumptions, inferences, and deductions, that the record clearly establishes their marriage according to the forms of the common law, and which renders it unnecessary for us to determine whether the facts also authorize, with the same aid and assistance, an inference that a legal ceremonial marriage was performed uniting them as husband and wife, and for which reason a discussion of that question will not be undertaken.

We, therefore, conclude that the court erred in affirming the order of the board, and its judgment in doing so is reversed, with directions to enter one directing the board to enter an order on its record discontinuing the installment payments of the award upon the ground that appellee entered into a common-law marriage with Dr. Elliott, whereby all future installments became forfeited.