### Edgewater Coal Co. v. Yates.

(Decided Nov. 8, 1935.)

HOWARD VanANTWERP, Jr., and HARMAN, FRANCIS & HOBSON for appellant.

W. K. STEELE for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Bill Yates, Jr., was killed on November 14, 1928, while in the course of his employment by the appellant, Edgewater Coal Company. An award of $4,000, payable in installments, was made to his widow, the appellee, Oma Yates, by the Workmen's Compensation Board. Payments thereunder were duly made to September 14, 1932. About that time the appellant was informed that appellee was living with one John Blair at Omar, W. Va., as either his legal or common-law wife. Thereupon a motion was filed by appellant before the Workmen's Compensation Board, seeking to reopen the case and to set aside the previous award, under section 4894 of the Statutes, providing that compensation to any dependent shall cease at the death or legal or common-law marriage of such dependent. The case was reopened, but, upon a hearing by a single member of the board, the motion was overruled, and the old award was reinstated. Upon appeal to the full board, the ruling by a single member was reversed, and the payment of compensation was terminated. An appeal was taken by the appellee to the Pike circuit court, where the ruling made by the full board was set aside. This appeal is prosecuted from the judgment of the Pike circuit court.

It is not contended that appellee has contracted a legal marriage with John Blair, but it is insisted that by her actions she has become his common-law wife, within the meaning of the statute. Common-law marriages, as such, are not recognized in Kentucky. However, in applying section 4894 of the Statutes, it has been necessary for us to apply rules in determining the status in the same manner as if such marriages were accepted as legal for all purposes. Elkhorn Coal Corporation v. Tackett, 243 Ky. 694, 49 S. W. (2d) 571; Nolan v. Giacomini, 250 Ky. 25, 61 S. W. (2d) 1055. We will not, of course, disturb the findings of fact made by the Workmen's Compensation Board where there is evidence to support them. Our only concern is whether or not the facts so found by the board are sufficient in law to constitute a "common-law marriage" within the meaning of the statute. It was not the intention of the Legislature, in enacting section 4894, to punish a de-

pendent for immorality. Layman-Calloway Coal Co. v. Martin, 209 Ky. 690, 273 S. W. 496. Sexual relations between a man and a woman are not alone sufficient to constitute a common-law marriage. There must be an agreement to assume the marriage status. Where cohabitation and repute are relied on to show a marriage, the cohabitation must be as husband and wife, and not merely meretricious. It has been well said that "the only difference between a formal marriage under license, and a common-law marriage, is in the method of expressing consent." Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 246, 91 A. L. R. 212.

Circumstantial evidence may, of course, be relied upon to establish such a marriage. But testimony that a man and woman may be living in the same house, where that situation is explained by the fact that the woman is a housekeeper and is paid wages by the man, is certainly not such a circumstance as to authorize a conclusion that they have entered into an agreement to assume a marital status and have consummated that agreement by open cohabitation as man and wife. It has been decided that it is the duty of courts to presume the legality of the relationship between a man and woman openly cohabiting and to presume morality, and not immorality. Elkhorn Coal Corporation v. Tackett, supra. Certainly, however, where, as in the case at bar, the only showing is that the woman was frequently seen at the home of the alleged husband, performing domestic chores, occasionally making purchases of groceries for his account, and occasionally permitting him to drive her automobile, the law should not presume from these facts that the relationship is meretricious, and, having thus deduced an improper connection, presume that the parties are married, in order to make that situation legal. No such presumption on a presumption may be justified. The very statement of the reason for presuming a marriage—that the law presumes morality— destroys an essential premise in the reasoning of the board on which it based its conclusion that a marriage existed. The case is plainly a different one from Elkhorn Coal Corporation v. Tackett, supra. In that case cohabitation as husband and wife and sexual intercourse were admitted. The court held that the presumption of legality of the relationship overcame, on the facts there presented, the positive denial by the man and woman that they had agreed to a marital status. In the case

at bar the facts are wholly insufficient to establish any sexual relationship between the appellee and John Blair. The most that can be said is that the facts disclose an opportunity for such relationship. There is nothing on which to attach a presumption of marriage on the theory that the law presumes morality. Every witness introduced by appellee to prove a marriage by repute simply stated that he assumed appellee was Mrs. Blair from seeing her around the home where John Blair lived. None of them was willing to state that she had ever spent a night in John Blair's house, and appellee herself states that during this entire period she was living at the home of her sister and merely going to Blair's home to work in the daytime. No witness stated that Blair had ever recognized appellee as his wife. It was shown that a registered letter sent by counsel for appellant to "Mrs. Oma Blair" was signed for by appellee. The postmaster testified that he told appellee's sister that he had the letter for appellee and that he asked her to have appellee come in and sign the receipt. Though this may be in the nature of an admission by the appellee, it is so easily reconcilable with a different and proper relationship between appellee and Blair that we do not consider it a basis to support the finding of the board. The letter was not addressed to "Mrs. John Blair." The appellee's first name is not a common one, and it was not unnatural that she should accept the letter and sign for it, knowing, as she must, that there was no other person who might be designated as Mrs. Oma Blair.

We conclude, therefore, that there was no evidence of probative force to establish a common-law marriage upon either the basis of a presumption of legality of an otherwise illegal relationship or upon the basis of open cohabitation and general repute in the community.

Judgment affirmed.