## Gilbert v. Gilbert.

(Decided Nov. 25, 1938.)

WAUGH & HOWERTON and THOMAS S. YATES for appellant.
LITTLETON & JARVIS for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

The appellant, Mrs. Ruth (Hill) Gilbert, plaintiff below, instituted this suit in the Carter Circuit Court against appellee, W. A. Gilbert, defendant below, seeking a divorce and alimony on grounds of abandonment; confirmed and habitual drunkenness, accompanied by a wasting of estate; and cruel and inhuman treatment. She alleges by reason of the marital relation she advanced defendant $6500, most of which was expended in improving his home, and she seeks to have this sum restored her. The petition alleges these parties entered into a common-law marriage in Ohio, in March 1927, and pursuant to this marriage contract lived and cohabited together as man and wife until their separation in April, 1935. The Chancellor found from the evidence these parties had never been married, as is shown by the written opinion filed as part of the record, and entered a judgment dismissing the petition and plaintiff has prosecuted this appeal.

The record shows that in July or August, 1926, these parties met at Martinsville, Indiana, a watering place. The plaintiff was then about 28 years of age and was the wife of Paul C. Hill, from whom she had obtained an interlocutory divorce some years before, but it had not become final. Defendant was then a bachelor about 44 years of age, residing at Soldier, Kentucky, where he owned and operated a store. While at Martinsville plaintiff and defendant became infatuated with each other. Irvin Brinkman, who lived in, or near Cincinnati, and from the record appears to have been engaged in operating a pool room and, perhaps, a road house, became acquainted with this couple in Martinsville.

Gilbert, at times, went to Cincinnati to buy stock for his store and he arranged to meet plaintiff there in September 1926. She was to be accompanied by another woman. Gilbert and his friend, a man named Pearl Fuller, went to the railroad station in Cincinnati to meet the women. Previously, Gilbert had mailed plaintiff a check for $15, dated September 14, 1926, to pay her ex-

penses in coming to Cincinnati from Indiana. The friend of plaintiff did not arrive with her and Gilbert took the plaintiff to the Avery Hotel in Cincinnati, where he had engaged a room for himself and another just across the hall for the two women. Gilbert testified he slept with the plaintiff that night, but she denies this. Gilbert got in touch with his friend, Brinkman, who took him and the plaintiff to a night club, Castle Farms, just outside of Cincinnati.

Some five weeks after this incident the plaintiff, upon invitation from Gilbert, went to Soldier, Kentucky, and he took her into his home with his parents, where she lived with him as his wife. He introduced her as such; took out a joint life insurance policy, both signing the application as husband and wife. She helped him in his store, kept house for him, greatly improved his home and cared for his invalid mother. The defendant visited plaintiff's people with her, told them they were married and his entire conduct through the years they lived together was a full and complete recognition of, and holding plaintiff out as, his wife.

Paul C. Hill was granted a divorce from the plaintiff March 2, 1927. She testified as follows: That she and Gilbert went to Cincinnati the latter part of March, 1927, for the purpose of being married. Fearing if they had a ceremonial marriage it might get back to their friends, and seeing a lawyer's sign across the street from the hotel, she consulted him and was advised a common-law marriage is recognized in Ohio. She gave this lawyer's name as Kunkles, but could not remember his initials or given name. She informed Gilbert as to this and he likewise wanted no publicity as to their marriage. So by agreement they put their hands on a Bible in the Avery Hotel and declared from that day on they were man and wife. She further testified that night they slept together and consummated their marriage and the next day Gilbert introduced her as his wife to several wholesale people from whom he bought goods, but whose names she could not recall, except she thought one of them was a Mr. Stix. Also, Gilbert got in touch with Brinkman and told him they were married and Brinkman entertained them at Castle Farms. She testified this common-law marriage was on Tuesday and they remained in Cincinnati until the following Friday, when they returned to Soldier, Kentucky, and lived together as husband and wife until their separation in the Spring

of 1935. Defendant denied he and plaintiff ever entered into a common-law marriage contract, saying he was in Cincinnati with plaintiff only one time and that was when he slept with her in September 1926.

To prove the allegation of her petition that a common-law marriage is recognized in Ohio, she introduced an eminent Ohio lawyer, Hon. A. R. Johnson. Mr. Johnson testified common-law marriages are recognized by the State of Ohio, citing among other cases, Umbenhower v. Labus, 85 Ohio St. 238, 97 N. E. 832, and Howard v. Central National Bank of Marietta, 21 Ohio App. 74, 152 N. E. 784. Investigating these authorities, we find they uphold Mr. Johnson's testimony that a common-law marriage is recognized in Ohio, if the marriage agreement is mutual; between parties that are competent to contract a marriage; is in praesenti and not in futuro; and is followed by cohabitation as husband and wife with a holding out by the parties in their social circle that they are married; but common-law marriage must be proven by clear and convincing evidence.

Kentucky does not recognize a common-law marriage except in applying section 4894 of the Workmen's Compensation Act (Kentucky Statutes). It is written in Edgewater Coal Co. v. Yates, 261 Ky. 335, 87 S. W. (2d) 596, 597:

"Common-law marriages, as such, are not recognized in Kentucky. However, in applying section 4894 of the Statutes, it has been necessary for us to apply rules in determining the status in the same manner as if such marriages were accepted as legal for all purposes."

But a marriage, valid where it takes place, is valid everywhere, Hopkins County Coal Co. v. Williams, 219 Ky. 156, 292 S. W. 1088, except in those instances, not necessary to mention here, where the marriage is against the public policy of the state. Marriage is a fact which may be proven as other facts. Scott v. Scott, 200 Ky. 153, 252 S. W. 1019.

The plaintiff and Gilbert contradict each other as to the common-law marriage and we must determine from other evidence and the surrounding facts and circumstances who is correct. She admits she was in Cincinnati with Gilbert in September, 1926, but denies she slept with him, stating that the time they slept together

was in March, 1927. Gilbert testified he was in Cincinnati with her only one time and that was in September, 1926. He is supported in this statement by Brinkman, a disinterested witness, who testified the occasion when he entertained this couple was five or six weeks after they had all been in Martinsville together. He places the time of the entertainment given by him as being in October or November, 1926, and that he only saw these people in Cincinnati on this one occasion. On cross-examination he is steadfast and positively says it could not have been in March, 1927. A bill of goods Gilbert bought from Louis Stix Company bears date of September 25, 1926, and his check he mailed the plaintiff bears date of September 14, 1926. This evidence strongly supports defendant's version of the Cincinnati trip and just as strongly contradicts plaintiff's version thereof.

Since Brinkman never entertained them but the one time, and never saw them in Cincinnati but the one time, his testimony is quite important. Then when plaintiff was served with certain papers at the time the divorce suit was instituted she told Esq. Teet Conn she and Gilbert were not married.

Mrs. Allen Clevenger testified that about this same time the plaintiff told her she and Gilbert never married, Mrs. Clevenger saying, "She said she didn't have no divorce when they went down there."

After a thorough and careful consideration of this record we are convinced the plaintiff and Gilbert were in Cincinnati in September, 1926, and not in March, 1927. Such being our opinion, there could not have been any common-law marriage entered into in Cincinnati, as she was not competent to enter into a contract of common-law marriage, due to her then marital status.

Much is said in the briefs on both sides as to whether plaintiff has the burden of proving the common-law marriage, or Gilbert had the burden of disproving it. We do not regard the burden of proof of the least importance since the evidence convinces us the parties were in Cincinnati but the one time, and that was in September, 1926, and the plaintiff was then the wife of Hill and was not competent to enter into a common-law marriage contract. Nor are the exceptions to the depositions of any importance, since none of the depositions excepted to relate to the time of the Cincinnati trip, or what happened on that occasion.

564

The opinion of the Chancellor shows there is a common-law action pending in the Carter Circuit Court between these parties to settle their property rights, therefore, it cannot be said the loss of this suit will deprive plaintiff of any sums she may have advanced defendant by reason of the alleged marital relation.

The evidence in this case convinces us the Chancellor reached a correct decision. But even if the evidence had left the mind of this court in doubt, we could do nothing but affirm the Chancellor. Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606; Martyn v. Jacoby's Adm'r, 223 Ky. 674, 4 S. W. (2d) 684.

The judgment is affirmed.