[Sac. No. 700.  Department Two.—January 30, 1900.]

In the Matter of the Estate of GEORGE M. KASSON, Deceased.  MARY E. MANN, Appellant, v. MARTHA E. McCHESNEY et al., Respondents.

ESTATES OF DECEASED PERSONS—PROCEEDING TO DETERMINE HEIRSHIP—HOSTILE PARTIES — INDEPENDENT ACTORS — CROSS-EXAMINATION OF WITNESSES.—In a proceeding to determine heirship under section 1664 of the Code of Civil Procedure, each person who appears, and either by complaint or answer sets up a distinct claim of heirship, or right to distribution of the estate, peculiar to himself, is an actor, and has a separate and independent right to conduct his case according to his own judgment, including the right to cross-examine the witnesses of hostile parties; and an independent actor styled a defendant cannot be compelled to yield his judgment as to cross-examination of a witness to that of counsel for the plaintiff.

ID.—REPETITION OF CROSS-EXAMINATION — IDENTITY OF QUESTIONS—DISCRETION OF COURT.—One party cannot be rightfully precluded from cross-examining the witness of a hostile party as to a certain subject matter, upon the ground that a different hostile party had previously examined him as to that matter; but, where there are numerous parties, the court may, in its discretion, prevent frequent and apparently useless repetitions of the same identical questions by different parties.

ID.—CROSS-EXAMINATION OF MATERIAL WITNESS — IMPROPER RESTRICTION.—Where a hostile witness has testified to material matters extending over a long period of time, upon whose testimony the court has based its findings against the appellant, a liberal latitude should have been given to the appellant on cross-examination to test the intelligence, accuracy of memory, disposition to tell the truth, bias, relation to the parties, interest, and motives of the witness; and a refusal to allow a reasonable cross-examination of such a witness is ground of reversal.

ID.—IMPROPER IMPEACHMENT OF WITNESS—KEEPING HOUSE OF ILL-FAME.—A witness cannot be asked on cross-examination, for purposes of impeachment, whether she did not keep a house of prostitution in a place where she had lived.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial.  Edward I. Jones, Judge.

The facts are stated in the opinion of the court.

Woods & Levinsky, for Appellant.

Budd & Thompson, Nicoll & Orr, and John A. Percy, for Martha E. McChesney et al., Respondents.

J. A. Louttit, and Louttit & Middlecoff, for William A. Cowdery, Respondent.

Gould & Bogue, for Philander N. West and P. B. Fraser, Respondents.

H. R. McNoble, for Rosa B. Hunt, Respondent.

Denson, Oatman & Denson, for George W. Lindy, Respondent.

McFARLAND, J.—The deceased George M. Kasson, died testate at Stockton, California, in September, 1895. By his will he left all of his property to certain persons, most of whom were his nieces and nephews, and who may be designated here for convenience as "Martha E. McChesney and others," and are the respondents in this appeal. The will was admitted to probate during the year 1895, and letters testamentary were issued to Clark McChesney, who was named in the will as an executor, and duly qualified and entered upon the discharge of his duties as such executor. Within the statutory time George W. Lindy filed his petition, and afterward a complaint, under section 1664 of the Code of Civil Procedure, to have the rights of all persons to the estate of Kasson and all interests therein ascertained and declared. He averred in his complaint that he was the legitimate son and the only child and heir of the said George M. Kasson, and that as no provision is made for him in the will, and as it does not appear that the omission to provide for him in the will was intentional, therefore he is entitled to the whole estate. Martha E. McChesney and others filed answers in which they denied that plaintiff was the son of the testator, and claimed that they, as legatees and devisees, were entitled to have the estate distributed to them. Mary E. Mann filed an answer on her own behalf, in which she denied that the plaintiff was the son of the testator, and set up that she was the daughter and only child of said George M. Kasson, and that

CXXVII. CAL.—32

as no provision was made for her in the will, and as it did not appear that the omission to provide for her was intentional, therefore she was entitled, as the only heir, to have the entire estate distributed to her. After a hearing, the court rendered judgment in which it was declared and decreed that neither the plaintiff, Lindy, nor the claimant, Mary E. Mann, was a child or heir of the said Kasson, deceased, and that neither of them was entitled to any part of the estate; and that Martha E. McChesney and others were entitled to have the estate distributed to them as legatees and devisees under the will. From this judgment and from an order denying a motion for a new trial the claimant, Mary E. Mann, appeals. No appeal has been taken by the plaintiff, George W. Lindy.

Appellant contends that the evidence was not sufficient to warrant the findings of the court; but as, in our opinion, the judgment and order appealed from must be reversed for errors of law hereinafter noticed, it is not necessary for us to pass upon the sufficiency of the evidence, although it may be said that it was quite contradictory and conflicting.

Appellant contends that the court committed a great many errors in ruling upon the admissibility of evidence, the main points under this head being that the court erred in sustaining objections to questions asked by appellant's counsel in cross-examination of witnesses of the respondents. These points are presented by something over one hundred exceptions. We cannot be expected to notice each, or any considerable number, of these exceptions. We will pass upon them, mainly, as a whole, specifying a few of them for the purpose of showing the general character of the exceptions; and in order to do this it is necessary to notice briefly the nature of the claims made by the different parties, and the general character of the evidence introduced.

The plaintiff, Lindy, claimed that the deceased George M. Kasson, was married to one Mary Hayden, in St. Louis, Missouri, on the twenty-eighth day of February, 1845, and introduced a certificate of marriage by a justice of the peace given on that date and certifying that he had married George M. Kasson and Mary Hayden, and claimed that plaintiff was the son and only child of said parties, and was born on the thir-

tieth day of April, 1847. The appellant, Mary E. Mann, denies that said certificate of the justice of the peace was of the marriage of the parents of plaintiff Lindy, but claims that it was a certificate of the marriage of her parents, and that she is the daughter and only child of said George M. Kasson and Mary Hayden, and that she was born at said city of St. Louis on the fifteenth day of March, 1849. She claims that her father, the said Kasson, deceased, removed from St. Louis to the state of California in about the year 1850, and that a few years afterward, when she was six or seven years old, she removed with her mother to the state of Arkansas; that she, appellant, went to live with a family named Flint on a ranch near a little town called Loanoke, and lived there about twelve years; that in 1869 the Flints moved to Hot Springs, Arkansas, and she went with them, and that her mother, whom she calls Mary Kasson, was then living at Hot Springs at a hotel called the Earle House, and frequently visited her at the home of the Flints; that about three or four months afterward she, appellant, left Hot Springs; that she returned to Hot Springs in a few months and lived there until about 1872; but that when she returned to Hot Springs her mother had left, and that she had not seen her since and supposed she was dead. The respondents, Martha E. McChesney and others, contend that the claims of the plaintiff and the appellant are both unfounded; that the woman who was married to Kasson in 1845 was not the woman who went to Hot Springs and whom appellant claims to have been her mother; that the woman who actually married Kasson was a Mrs. Mary Hayden, whose maiden name was Mary Ann Mize; that she lived with Kasson until some time in the year 1850, when he went to California, and that he returned to St. Louis and lived with her a while as husband and wife in 1852; that she is not the mother of either plaintiff or appellant, and never had any child by the said Kasson; that she lived in St. Louis until 1876 and then came to California; that she was divorced from Kasson and was afterward married to one Stansbury; that after his death and after coming to California she was married to a man by the name of Molloy; that she is still living and that her present name is Mary Ann Molloy. Respondents claim that they produced this identical woman at the trial; and they

did produce a woman calling herself Mary Ann Molloy who testified, among other things, that she was the woman who was married to Kasson in 1845, in St. Louis, and that the facts as to her life and history alleged in the contention of respondents as above stated are true.

Many of the exceptions upon which the appellant relies were to rulings of the court sustaining objections to questions asked by her of the witness Molloy on cross-examination, and we think that many of these rulings were prejudicially erroneous. The testimony of this witness, whether true or not, was certainly in many respects quite remarkable, and presented an instance where a wide range of cross-examination should have been allowed. She testified to material matters occurring during a period of from fifty to sixty years, and a liberal latitude should have been given appellant on cross-examination to test her intelligence, knowledge, accuracy of memory, disposition to tell the truth, bias, relation to the parties, interest, motive, etc. In such a case, a refusal to allow a reasonable cross-examination is a ground of reversal. (*Neal v. Neal*, 58 Cal. 287; *Steinburg v. Meany*, 53 Cal. 425; *Wixon v. Goodcell*, 90 Cal. 622. See, also, *McFadden v. Santa Ana etc. Ry. Co.*, 87 Cal. 464; *People v. Benson*, 52 Cal. 380; *Sharp v. Hoffman*, 79 Cal. 404; *People v. Gallagher*, 100 Cal. 466; Greenleaf on Evidence, sec. 446.) The importance of the testimony of this witness is accentuated by the fact that the court expressly found, in accordance with her statements, that she is the woman who intermarried with Kasson at St. Louis on the twenty-eighth day of February, 1845; that she continued to be his wife "until about the year 1862," and that "no child or children were ever born to said George M. Kasson and Mary A. Kasson," and from this finding all the other findings necessarily follow.

In order to understand the pertinency of questions which were not allowed to be asked the witness Molloy on cross-examination by appellant, it is necessary to state briefly some of her testimony in chief and on cross-examination by plaintiff. She testified, among other things, that she was born in Illinois in December, 1824, and moved to St. Louis in 1843; that she married Hayden, her first husband, when she was about fourteen years old, but could not remember the month or the year of

her marriage to him, and that she heard—but did not know—that he got a divorce from her; that she married Kasson, as before stated, in 1845, and that after he went to California she received many letters from him, and that she thought she got a divorce from him, but did not know the year of the divorce, or how long it was after he went to California, but that it was obtained in St. Louis, and that she never bore either a son or a daughter to Kasson; that in 1863 she was married to Stansbury, who afterward died, although she did not remember the year of his death, but thought it was about two and one-half years after the marriage; that in 1876 she moved to California and lived between Los Angeles and Santa Monica, and afterward in Los Angeles; and that in 1877 she was married in Los Angeles to Charles Pinckney Molloy, and lived with him about two years, when he died.    The marriage license and certificate of marriage were introduced, showing that the witness was married to Molloy on January 3, 1877, from which it appeared that she was a native of Kentucky, aged forty years.    She testified that this marriage record was correct.    She further testified that in 1847 she had a child living with her at St. Louis named Fannie Patterson, who stayed with her until she was about ten years old; that a day or two before she left St. Louis for California she got from an orphan asylum a child two or three days old, whom she wanted for a companion, and brought her to California; that she went by the name of Althea May, and afterward married James Simmons of Los Angeles; that during her whole life she had never been without children, not her own, living with her; that after she went to Los Angeles she wrote a letter to Kasson, addressing it to him at Stockton, and received a reply; that when Kasson returned to California in 1852 he did not want her to go with him, but told her that when two families named West and Dibble, whom she knew, should go to California, he would be glad to have her go with them, but that when these families went she did not go with them. She further testified that in May, 1897, she went from Los Angeles to Oakland, California, and had since lived there in a house on Seventh avenue, and that on July 4, 1897, she was joined there by a man named Wilson and his stepdaughter, Miss Milliken, and a niece of the witness, Mrs. Goldman, all of

whom came at that time from the east for the purpose of being witnesses for respondents, and who remained with her in that house until the trial of this cause commenced, which was not until March, 1898, and testified at the trial; and that she left Los Angeles for Oakland a few days after Clark McChesney, one of the respondents, had first visited her at Los Angeles. She also testified that she bore one child to Hayden, which was the only child she ever bore.

The foregoing summary of parts of her testimony is sufficient for an understanding of the exceptions to rulings made on her cross-examination.

It would require too much space to state here all the questions asked of the witness Molloy by appellant to which objections were sustained; it will be sufficient to state enough of them to show the general nature of the rulings made on cross-examination. She was asked, among other questions, the following:

"Q. How long had you known James Hayden before you were married to him?"

"Q. Under what circumstances did you meet Mr. Hayden?"

"Q. How old were you when you married James Hayden?"

"Q. How long did you live with James Hayden as his wife?"

"Q. In what court, and in what city and county and state, and when, did you obtain the decree of divorce, if any, from James Hayden?"

"Q. Did you and the man you say was your husband, Mr. Kasson, ever board in the house of Mrs. Milliken?"

"Q. What year was the last letter written by Mr. Kasson that you received from him while he was in California and you were in St. Louis?"

"Q. Tell me the name of the court and the place where it was located and the time when you obtained the divorce from Mr. Kasson?"

"Q. Is it not true, then, that you were desirous of coming to California and your husband would not allow you to?"

"Q. When did you first ascertain that a letter addressed to him at Stockton would reach him?"

"Q. Do you remember how you signed the letter you say was sent to Mr. Kasson from Los Angeles?".

"Q. State, if you know, whether Mr. Stansbury was in the habit of, or did communicate with your husband George W. Kasson while he was living in California?"

"Q. When and where did you first meet Mr. Charles Molloy?"

"Q. How long had you known Mr. Molloy before you married him?"

"Q. Was he engaged in the same business prior to your marriage that he was at the time of his death?"

"Q. How long had you known Mr. Stansbury before you married him?"

"Q. Do you notice a discrepancy there [referring to the certificate of her marriage with Molloy] of fourteen years in your age?"

"Q. Could you tell me whether it was the early, middle, or latter part of year 1875 when you got this little girl?"

"Q. What means had you, who had never had but one child, and that when you were about sixteen years of age, of giving this little infant nourishment?"

"Q. Was the institution from which you took this child conducted by sisters of mercy or charity, or was it a public institution?"

"Q. Was it an institution of a public or private nature?"

"Q. Was this little girl ever christened while in your charge?"

"Q. Why did she attend the public schools under the name of Molloy and marry under the name of Stansbury?"

"Q. Please describe this girl who you say was not your daughter and who married Mr. Simmons?"

"Q. How old was this girl when she married Mr. Simmons?"

"Q. You say you have always been in the habit of having babies or children with you?"

"Q. What was the cause of habit on your part of having babies or children at your home that did not belong to you?"

"Q. What has become of the various children or babies who have been taken into your home on these various occasions—have they all married or all died—what has become of them?"

"Q. Please state the name of the two children who lived with you at your place between Santa Monica and Los Angeles, and who their parents were."

"Q. When did you first meet Mrs. Peltier in California?"

Witness having testified that Mrs. Peltier had recently written in the memorandum-book of witness the name of the justice who married her to Kasson, was asked: "Why did she write it?"

"Q. Do you know where Mr. Wilson and his stepdaughter, Sara Milliken, and Mrs. Goldman, came from when they arrived at your place in Oakland, for the purpose of being witnesses in this case?"

"Q. Who paid the rent for the house you occupied with these other witnesses in Oakland?"

"Q. How long did you know the people to whom you gave your key to your house in Los Angeles when you came to Oakland?"

"Q. Why did you not deliver the key to Mrs. Simmons, whom you brought from the east with you?"

"Q. Have you made any arrangements for the future as to where you will go to live?"

"Q. Who was the man who came to you in Los Angeles and asked you about your having lived in St. Louis?"

To each of the foregoing questions respondents objected, the court sustained the objection, and appellant took an exception to the ruling; and, as was said in *People v. Benson, supra,* "It is difficult to see on what ground this evidence was excluded." Many of the objections were on the general ground that the question was incompetent, irrelevant, not proper cross-examination, etc.; but one of the grounds of objection to quite a number of questions was that "counsel for plaintiff had cross-examined as to that matter," the fact being that after the witness had testified in chief she had to some extent been interrogated by counsel for the plaintiff, Lindy, before the cross-examination by appellant began. Even if, under the law of evidence, appellant had no right to cross-examine as to a matter about which plaintiff had examined the witness, still the rulings would not be justified because the record does not show that to any considerable extent there has been such examination by plaintiff; certainly, the greater part of the questions asked by appellant would not be within such a rule. It is evident, however, that the court erroneously proceeded upon the theory that

there is such a rule of evidence as above indicated.   The record shows that after a question had been asked by counsel for appellant, the following occurred:

"Counsel for defendants objected to the question upon the ground that counsel for plaintiff has cross-examined in regard to this matter.

"The Court.—She has been examined as to that.

"Mr. Levinsky.—I beg to differ, not by me.

"The Court.—She has been examined by Mr. Denson, counsel for the plaintiff.

"Mr. Levinsky.—Your honor, please, do I understand that you will not permit me to cross-examine this or other witnesses upon any matter that Mr. Denson, counsel for plaintiff, may have cross-examined upon?

"The Court.—That is exactly it."

After some argument of the point by the counsel for appellant, the court said: "I will sustain the objection."

It is not true, as a legal proposition, that in a proceeding under section 1664 one party can be rightfully precluded from cross-examining a hostile witness as to a certain matter, upon the ground that another party had previously examined him as to that matter.   Under this section each person who appears, and either by complaint or answer sets up a claim of heirship, etc., peculiar to himself, is an actor, and has a separate and independent right to conduct his case according to his own judgment, including the right to ask proper questions of witnesses of hostile parties.   After the parties have been brought into court by petition, notice, etc., the one who chooses first to file a complaint is called, for convenience, the "plaintiff," and the others are called "defendants," and their pleadings are called answers; but the requirement as to each pleading is substantially the same, that is, it must set forth "the facts constituting his claim to heirship," etc.   The averments of the pleadings show which parties are hostile to each other, and each has a right to cross-examine the witnesses of a hostile party.   In the case at bar, the attitude of appellant was adverse to that of all the other parties.   She had her own theory of her case, and her counsel could not be compelled to yield his judgment as to cross-examination of a witness to that of counsel for plain-

tiff. Of course, in a proceeding under section 1664, when there are numerous parties, a court could, in its discretion, prevent frequent and apparently useless repetitions of the same questions by different parties; but the rulings of the court in the case at bar above set forth, as presented by the record, cannot be justified on that ground.

There are many other exceptions relied on by appellant, but many of them may not arise on another trial, and they are too numerous to be separately discussed here. It is necessary to say, however, that it was error to overrule the objection of appellant's counsel to this question asked her when a witness on cross-examination: "Is it not a fact that the house you were keeping in Marysville was a house of prostitution?" (*People v. Crandall*, 125 Cal. 129, 135; *Estate of James*, 124 Cal. 653, 657, and cases cited.) It may be stated, generally, that appellant was too much restricted in her cross-examination of many of respondent's witnesses, and particularly in the cross-examination of respondent's witnesses, Goldman, Clark, McChesney, Robin, and Portier.

The judgment and order appealed from are reversed, and the appellant, Mary E. Mann, is granted a new trial.

Henshaw, J., and Temple, J., concurred.