Where a marriage is set up as having been performed at a particular time or place or by a particular form or ceremony, and the evidence fails to support the assertion, the party asserting the marriage will not be allowed to rely on cohabitation and reputation to establish it. (38 C.J. 1325; Henry v. McNealey,24 Colo. 456, 50 P. 37; McLaughlin v. Barnum, 42 Md. 251;Denison v. Denison, 35 Md. 361.)
When it is shown that there has been an actual marriage solemnized according to the method prescribed by law, every inference is to be invoked in support of its validity and against an alleged antecedent marriage. The presumptive facts validate the last marriage. But, to indulge the presumption, it must be first shown that such second marriage was one consummated in accordance with the forms of law. (38 C.J. 1330; Page v.Roddie, 92 Okla. 236, 218 P. 1092; In re Wogin-up's Estate,57 Utah, 29, 192 P. 267; Williams v. Williams, 63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110; Henry v. McNealey,24 Colo. 456, 50 P. 37; Lopez v. Missouri K. T.R.R. Co.
(Tex.Civ.App.), 222 S.W. 695; Bracken v. Bracken, 45 S.D. 430,188 N.W. 46; Wenning v. Teeple, 144 Ind. 189, 41 N.E. 600;Industrial Com. v. Dell, 104 Ohio St. 389, 34 A.L.R. 422, 135 N.E. 669.)
If a prior marriage is shown to have existed at the time of the second marriage, the burden of proving the removal of the impediment by death or divorce, and of the creation of a legal marriage after the removal of the impediment, rests upon the party asserting the validity of the second marriage. This is so, since a relation illicit in its inception is presumed to continue in the absence of countervailing evidence. (Brokeshoulder v.Brokeshoulder, 84 Okla. 249, 34 A.L.R. 441, 204 P. 284; In reRichards, 133 Cal. 524, 65 P. 1034; Henry *Page 374 
v. McNealey, 24 Colo. 456, 50 P. 37; Beck v. Utah-IdahoSugar Co., 59 Utah, 314, 203 P. 647; Weidenhoft v. Primm,16 Wyo. 340, 94 P. 453; Blodgett v. Blodgett, 109 Wn. 597,187 P. 340.)
In the absence of actual proof of the consummation of the second marriage, cohabitation and reputation are insufficient to raise the presumption in favor of legality or validity of the so-called second marriage. (Lopez v. Missouri K. T.R.R. Co.
(Tex.Civ.App.), 222 S.W. 695; Williams v. Williams,46 Wis. 464, 32 Am. Rep. 722, 1 N.W. 98; Gorden v. Gorden, 283 Ill. 182,119 N.E. 312; Bracken v. Bracken, 45 S.D. 430,188 N.W. 46; Gamble v. Rucker, 124 Tenn. 415, 137 S.W. 499; Cargile
v. Wood, 63 Mo. 501; Topper v. Perry, 197 Mo. 531, 114 Am. St. Rep. 777, 95 S.W. 203; Randlett v. Rice, 141 Mass. 385,6 N.E. 238; 38 C.J. 1299, 1330, and cases cited in notes.)
The burden was on the defendants, it being undisputed that the deceased had deserted his family in Wisconsin, to show a dissolution of the first marriage. (Williams v. Williams,63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110; Cole v. Cole, 153 Ill. 585,38 N.E. 703; Casley v. Mitchell, 121 Iowa, 96,96 N.W. 725; Rose v. Rose, 67 Mich. 619, 35 N.W. 802; IndustrialCom. v. Dell, 104 Ohio St. 389, 34 A.L.R. 422, 135 N.E. 669;Adger v. Ackerman, 115 Fed. 124, 52 C.C.A. 568.)
If a husband leaves his family and goes to parts unknown, while his wife remains where he left her, or in that vicinity, an inference of his death and possibly of his divorce may be drawn in favor of her innocence in case she remarries, yet no such inference reasonably can be drawn in his favor if he remarries. (Parker v. State, 77 Ala. 47, 54 Am. Rep. 43; Williams v.Williams, 63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110; Cole v.Cole, 153 Ill. 585, 38 N.E. 703; State v. Rocker,130 Iowa, 239, 106 N.W. 645; Commonwealth v. Thompson, 6 Allen (Mass.), 591, 83 Am. Dec. 653, 11 Allen (Mass.), 23, 87 Am. Dec. 685.) *Page 375 
While the law jealously regards the marriage relation and makes all reasonable assumptions in its favor, it has no special regard for second, in preference to first, marriages. (Pittinger v. Pittinger, 28 Colo. 308, 89 Am. St. Rep. 202, 64 P. 195; Copeland v. Copeland, 73 Okla. 252, 175 P. 764;Schmisseur v. Beatrie, 147 Ill. 210, 35 N.E. 525; Turner v.Williams, 202 Mass. 500, 132 Am. St. Rep. 511, 24 L.R.A. (n.s.) 1199, 89 N.E. 110.)
The fact that no divorce was obtained may be shown by evidence that the records of the court, where such divorce decree should be found if in existence, have been searched and that they show no such entry; but the fact may also be shown by other direct evidence and by circumstances. (Gamble v. Rucker, 124 Tenn. 415,137 S.W. 499; Madison v. Steckleberg, 101 Okla. 237,224 P. 961; Cartwright v. McGown, 121 Ill. 388, 2 Am. St. Rep. 105, 12 N.E. 737.) In order to prove that no divorce has been granted, it is sufficient that such evidence be offered as, in the absence of counter testimony, will afford ground for presuming that such is the case. (Compton v. Benham,44 Ind. App. 51, 85 N.E. 365; Madison v. Steckleberg, supra; Cole v.Cole, 153 Ill. 585, 38 N.E. 703; Williams v. Williams,63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110.)
A common-law marriage must be first established by clear, consistent and convincing testimony, especially where the establishment of such a marriage would invalidate a marriage wherein all of the statutory provisions were observed. (Peery
v. Peery, 27 Colo. App. 533, 150 P. 329.)
The burden was upon plaintiff to prove the allegations of her complaint. (In re Colbert's Estate, 51 Mont. 455, *Page 376 153 P. 1022.) This burden applied to the averments of the complaint, though they involved proof of a negative. (In re Rash's Estate,21 Mont. 170, 69 Am. St. Rep. 649, 53 P. 312.)
It must be borne in mind herein that plaintiff did not merely seek to establish herself as an heir to the estate, but rather to establish herself as sole heir, entitled to all the estate. It is the general rule that a person seeking to establish himself as an heir must, in proceedings such as this, allege and prove that there are no other relatives entitled to take in preference to him. (18 C.J. 871, 872; Rhino v. Emery, 72 Fed. 382, 18 C.C.A. 600; Smith v. Smith, 13 Colo. App. 295, 57 P. 747;Furr v. Burns, 124 Ga. 742, 53 S.E. 201; Craig v.Welch-Hackley Coal Co., 25 Ky. Law Rep. 232, 74 S.W. 1097;Tuthill v. Forbes, 164 App. Div. 728, 150 N.Y. Supp. 387.) Logic compels the view that in a case such as this, plaintiff must allege and prove that he is the only one entitled to inherit. All possible contingencies under which another might inherit must be met by the complaint and proof. (In re Salvin'sWill, 106 Misc. Rep. 111, 173 N.Y. Supp. 897; Gardner v.Kelsoe, 80 Ala. 497, 2 So. 680; Sorenson v. Sorenson,68 Neb. 483, 94 N.W. 540, 98 N.W. 837, 100 N.W. 930, 103 N.W. 455;Matter of Leslie, 175 App. Div. 108, 161 N.Y. Supp. 790; Furr
v. Burns, supra.)
Concerning the admissibility of declarations of a deceased person, see Roy v. King's Estate, 55 Mont. 567, 179 P. 821;Escallier v. Great Northern Ry. Co., 46 Mont. 238, 248, Ann. Cas. 1914B, 468, 127 P. 458; Gray v. Grant, 62 Mont. 452,206 P. 410; Lewis v. Shell, 205 Ky. 624, 266 S.W. 254; Inre Rich's Estate, 199 Iowa, 902, 200 N.W. 713; Fagan v.Fisher, 74 Colo. 473, 222 P. 647; Makinson v. Shumick,196 Iowa, 980, 193 N.W. 407; Goodin v. Cornelius, 101 Or. 422,200 P. 915; Bohen v. Insurance Co., 188 Iowa, 1349,177 N.W. 706; Landerdale v. O'Neill, 74 Okla. 119,177 P. 113; Heitman v. Bruns, 37 Cal.App. 489, 174 P. 67; Dixon
v. Dixon, *Page 377 123 Md. 44, Ann. Cas. 1915D, 616, 90 A. 846; Townsend v. Perry,146 App. Div. 225, 130 N.Y. Supp. 951; Plath v. Mullins,87 Wn. 403, 151 P. 811; Culp v. Wilson, 133 Ind. 294,32 N.E. 928; Grantham v. Gossett, 182 Mo. 651, 81 S.W. 895;Crowell v. Western Reserve Bank, 3 Ohio St. 406.
Where the fact of marriage is once established, the law presumes its validity. (In re Rash's Estate, supra.) "The presumption of the validity of an alleged marriage shown in fact to have been entered into is not conclusive, but may be rebutted by evidence of invalidating facts. To overcome the presumption, however, the evidence must be strong, distinct, satisfactory, and conclusive; and if there is any evidence to support a finding in favor of the marriage it will be sustained." (38 C.J. 1344;Rockcastle Oil Co. v. Baker, 167 Ky. 66, 179 S.W. 1070;Jackson v. Phalen, 237 Mo. 142, 153, 140 S.W. 879, 882;Sparks v. Ross, 72 N.J. Eq. 762, 65 A. 977; In re Hinman,147 App. Div. 452, 131 N.Y. Supp. 861; Johannesen v.Johannesen, 70 Misc. Rep. 361, 128 N.Y. Supp. 892; Chancery
v. Whinnery, 47 Okla. 272, 147 P. 1036; Ollschlager's Estate
v. Widmer, 55 Or. 145, 105 P. 717; Gamble v. Rucker,124 Tenn. 415, 137 S.W. 499; Suter v. Suter, 68 W. Va. 690, Ann. Cas. 1912B, 405, 70 S.E. 705; McGaugh v. Mathis,131 Ark. 221, 198 S.W. 1147; Matthes v. Matthes, 198 Ill. App. 515;Ward v. Ward, 24 Ga. App. 695, 696, 102 S.E. 35; Smith v.Smith, 32 Idaho, 478, 185 P. 67; Brett v. Brett,191 Iowa, 262, 182 N.W. 241.)
Mere proof of a prior marriage is insufficient to overcome the presumption of validity. (Kinney v. Tri-State Telephone Co.
(Tex.Civ.App.), 201 S.W. 1180; Madison v. Steckleberg,101 Okla. 237, 224 P. 961; Pittinger v. Pittinger, 28 Colo. 308, 89 Am. St. Rep. 193, 64 P. 195; Roxbury v. Bridgewater,85 Conn. 196, 82 A. 193.) So also declarations of one of the parties are insufficient to overcome the presumption of validity. (In re Seymour, 113 Misc. Rep. 421, 185 N.Y. Supp. 373; *Page 378 Boyd v. United States, 8 F.2d 779; Ollschlager'sEstate v. Widmer, 55 Or. 145, 105 P. 717; Gaines v.Relf, 53 U.S. 472, 13 L.Ed. 1071 [see, also, Rose's U.S. Notes]; In re Spondre, 98 Misc. Rep. 524, 162 N.Y. Supp. 943;Hawley v. Hawley, 180 Ill. 594, 54 N.E. 626; Coleman v.James, 67 Okla. 112, 169 P. 1064.)
We have found no authority for the proposition that an allegation of marriage connotes a marriage by solemnization and will only permit proof of such a marriage. Such a construction would do violence to our sections of the Codes relating to marriage and be against all authority. (Cuneo v. DeCuneo,24 Tex. Civ. App. 436, 59 S.W. 284; Harlan v. Harlan
(Tex.Civ.App.), 125 S.W. 950; James v. Mickey, 26 S.C. 270,2 S.E. 130; Linebaugh v. Linebaugh, 137 Cal. 26, 69 P. 616;Williams v. Williams, 46 Wis. 464, 32 Am. Rep. 722, 1 N.W. 98; Farley v. Farley, 94 Ala. 501, 33 Am. St. Rep. 141, 10 So. 646; 2 Bishop on Marriage, sec. 608.)
This action was brought by Agnes Welch for the purpose of determining heirship to lands granted by the United States to the heirs of her deceased father, pursuant to the provisions of sections 9501 to 9515, inclusive, of the Revised Codes of 1921. Following the directions of section 9502 Mrs. Welch named herself plaintiff, and the defendants were described as "all persons claiming any interest in or lien upon the real property herein described, or any part thereof."
It is set forth in the complaint that one Hiram J. Rhodes and Mariah R. Welch intermarried at Brothertown, Wisconsin, upon November 30, 1857, and that subsequent thereto and prior to December 8, 1913, Mariah R. Rhodes died; to the union there was born one child only, Agnes Rhodes, the plaintiff; that Hiram J. Rhodes never at any time intermarried with any *Page 379 
woman other than plaintiff's mother; that Hiram J. Rhodes died on December 8, 1913; that plaintiff is the only lawful issue of Hiram J. Rhodes, deceased, and his only living heir; that prior to December 8, 1913, plaintiff intermarried with one Art Welch, who ever after continued to be her husband; that on the 14th of November, 1917, the government of the United States, by lawful patent, granted to the heirs of Hiram J. Rhodes, deceased, certain lands in Toole county, Montana; that by reason of the facts aforesaid the plaintiff is and ever since the fourteenth day of November, 1917, has been the owner of and entitled to the possession of all of said lands, and so forth.
The defendants Hiram E. Rhodes, Mabel Knapp and the children of Minnie Burch, deceased, filed separate answers. Each admitted the marriage of Hiram J. Rhodes and Mariah R. Welch upon November 30, 1857, and that the plaintiff was the lawful daughter of that union. Each denied plaintiff's allegation that Hiram J. Rhodes never married any woman other than plaintiff's mother, and each alleged in effect that Hiram E. Rhodes, Mabel Knapp and Minnie Burch were the fruit of a marriage between Hiram J. Rhodes and Esther O'Brien, his second wife, which took place "on or about the year 1867."
Specifically, Hiram E. Rhodes alleged himself to be the son of a subsequent marriage of Hiram J. Rhodes, consummated with Esther J. O'Brien at Brothertown, Wisconsin, "on or about 1867"; he averred also that Hiram J. Rhodes, Mariah R. Welch and Esther O'Brien were Stockbridge Indians of the full blood "and that all of the tribal customs and relations were adhered to largely in the family and domestic relations at that time."
Mabel Knapp alleged that Hiram J. Rhodes, "on or about the year 1867," and subsequent to the death of Mariah R. Rhodes, married Esther O'Brien. The Burch heirs alleged that *Page 380 
Mariah R. Rhodes died prior to 1867, and thereafter and "on or about" that year Hiram J. Rhodes and Esther O'Brien intermarried.
Each defendant prayed that the heirs of Hiram J. Rhodes, and their respective shares in the property, be declared to be: Agnes Welch, one-fourth interest; Hiram R. Rhodes, one-fourth interest; Mabel Knapp, one-fourth interest; and the children of Minnie Burch, deceased, one-fourth interest.
Replies were filed to the answers by the plaintiff, in which the essential affirmative allegations were denied; it was denied that Mariah R. Rhodes died "on or about the year 1867," and alleged that she did not die until many years after the year 1867.
After the commencement of the action Agnes Welch died and Art Welch was substituted as party plaintiff.
The trial court found that "Mariah R. Rhodes died about 1901, and Hiram J. Rhodes was duly and legally divorced from his first wife, Mariah R. Rhodes, and said Hiram J. Rhodes legally intermarried with Esther O'Brien and the issue of said marriage with Esther O'Brien, to-wit: Hiram E. Rhodes, Minnie Burch and Mabel Knapp were legitimate"; accordingly it adjudged that the plaintiff, Hiram E. Rhodes, Mabel Knapp, and the children of Minnie Burch collectively, are entitled to share equally in the property. The plaintiff has appealed.
The parties to this action are the descendants of those Indians, members of the historic Six Nations, who in the first half of the last century emigrated from eastern states to reservations in the west; the ancestors of the litigants settled upon a reservation in Wisconsin. For a long time these Indians have been citizens of the United States.
At the trial, as in the pleadings, it was conceded that Hiram J. Rhodes and Mariah R. Welch were lawfully married on November 30, 1857. These people separated, but when the record *Page 381 
does not disclose. They were not living together in 1882 nor at any time after that.
About 1890 Agnes Rhodes married Art Welch and shortly thereafter Mrs. Mariah R. Rhodes took up her abode with them and lived with them until she died in 1900 or 1901. About 1895 Hiram J. Rhodes paid a short visit to Mr. and Mrs. Welch who were living at Amberg, Wisconsin. Mrs. Rhodes was with the family but it does not appear that there was any resumption of the marital relations between Hiram J. Rhodes and herself on that occasion; in fact, the record does not indicate that they even so much as engaged in ordinary conversation.
Shortly after the death of Mariah R. Rhodes, Hiram J. Rhodes again visited Mr. and Mrs. Welch, upon which occasion he remained with them three or four days. During his visit there, according to Mr. Welch, who gave this testimony over the objection of the defendants, Mrs. Welch reproached him with his neglect of her, asking why he did not think of her as he did of his other children, and he said to her: "You are my only rightful legal heir, the only one I have. Your papa some day will surprise you with something." In reply to this Agnes said: "You have gave those other children all your property and why don't you think of me?" To which he replied: "I was never married to Esther O'Brien; neither did I ever — there was no divorce action ever brought up with me and your mother, and * * * that makes you my only legal heir."
The defendants did not attempt to prove a ceremonial marriage between Hiram J. Rhodes and Esther O'Brien in 1867 or at any other time, nor did they offer any testimony with respect to tribal customs and relations. Counsel for defendants were surprised when the proof came in showing that Mariah R. Rhodes was living as late as the year 1900. They then offered proof tending to show the existence of a common-law marriage between Hiram J. Rhodes and Esther O'Brien. To this counsel for plaintiff objected upon the ground that the *Page 382 
proof was outside the issues as framed by the pleadings. The objection was overruled and defendants were allowed to proceed. No proof was offered to show when Hiram J. Rhodes and Esther O'Brien began living together; none that they ever cohabited at Brothertown, Wisconsin; none that their relations (whatever they were) began in 1867 or prior to 1873. A child was born to them in 1874, another in 1876, and later four others. Three of the children died in infancy; Minnie, Hiram and Mabel attained majority.
Hiram E. Rhodes testified that he was born at Stockbridge, Wisconsin (and it is likely his elder sister Minnie was born in that state), but Hiram's first recollection of a family residence was at Redwood Falls, Minnesota. There is ample proof that Hiram J. Rhodes and Esther O'Brien maintained family relations and deported themselves as husband and wife at Redwood Falls in 1882 and thereafter until they separated in 1899. In 1899 the family, by common consent, it would seem, sold their home at Redwood Falls and divided their property. Hiram E. Rhodes moved to Long Prairie, taking his father with him. The mother, Esther, who was losing her sight, was cared for by one of her daughters; she became totally blind in 1900. Hiram and Esther did not live together after 1899.
At the funeral of Hiram J. Rhodes, which occurred in 1913, there were present Mr. and Mrs. Welch and Hiram E. Rhodes. On that occasion Mrs. Welch said to Hiram E. Rhodes, so he testified, respecting decedent's property, the homestead in question: "She asked me if we was ready to make any kind of division. I asked her what kind of a division she wanted. She said, `Whatever is fair.' I said `Whatever you think is fair with me.' She says, `There is four of us and we might as well divide it four ways, each take one-fourth and,' she says, `We will all furnish money to go ahead and prove it up just the same as though he is living.'" There was some talk of the expense which necessarily would be incurred; Rhodes opined *Page 383 
that his sisters would not be able to contribute. Nothing came out of this conversation. Art Welch and his wife undertook to expend the necessary money and labor to bring about the issuance of a patent, and this was done without reference to the other children of Hiram J. Rhodes. Hiram E. Rhodes explained that when he offered to assist he was not allowed to participate and did not.
A just decision of this case upon the record certainly is not without difficulty. We have shown a valid marriage, and a separation of the spouses during a long term of years; one of the spouses at a later date is found to be maintaining family relations with another woman with whom he is bringing up children, the fruit of their union. He and the second woman are deporting themselves as husband and wife. Presumptions, at first blush conflicting, assert themselves. In fact, the decision of the trial court rests mainly, if not altogether, upon presumptions.
To begin with, upon whom is the burden of proof? In a case[1-4] like this every party is an independent actor, and is a plaintiff as against all other parties whose claims are adverse. (Estate of Kasson, 127 Cal. 496, 59 P. 950; Id., 141 Cal. 33,74 P. 436; In re Colbert's Estate, 51 Mont. 455,153 P. 1022.)
A marriage being proven is presumed to have continued to exist, unless the contrary be shown, or until a different and controlling presumption is advanced. (See exhaustive note to case of Brokeshoulder v. Brokeshoulder [84 Okla. 249,204 P. 284], 34 A.L.R. 411, 482.)
If the prior marriage is shown to have existed at the time of the second marriage, the burden of proving a remarriage to the second spouse after the dissolution of the first by death or divorce rests on the party asserting the validity of the second marriage (38 C.J. 1321), but, whenever a marriage has been established, there is a presumption in favor of its validity. It *Page 384 
will not be overthrown by the mere proof of a prior marriage; the presumption of innocence overcoming the presumption of the continued existence of the prior marriage. (Note to Howard v.Kelly, Ann. Cas. 1918E, 1230, and cases cited.) This presumption arises because the law presumes morality, and not immorality, and every intendment is in favor of matrimony. (Note in 34 A.L.R. 468, citing Pittinger v. Pittinger,28 Colo. 308, 89 Am. St. Rep. 193, 64 P. 195; Hynes v. McDermott,91 N.Y. 459, 43 Am. St. Rep. 677.) The presumption in favor of matrimony is one of the strongest known to the law. (Hadley v.Rash, 21 Mont. 170, 69 Am. St. Rep. 649, 53 P. 312.)
In the case of conflicting marriages of the same spouse, the[5] presumption of validity operates in favor of the second marriage. Even where the first marriage is established, it may be presumed in favor of the second that at the time thereof the first marriage had been dissolved either by death or by a decree of divorce so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage. (38 C.J. 1328 et seq.; Hadley v. Rash, supra; In re Huston's Estate,48 Mont. 524, 139 P. 458; Howard v. Kelly, 111 Miss. 285, Ann. Cas. 1918E, 1230, 71 So. 391; Marsh v. Marsh
(Cal.App.), 250 P. 411.) The presumption of the dissolution of the prior marriage may be indulged in favor of a subsequent common-law marriage, but in such case the requisite matrimonial consent to the informal marriage must be clearly established.
Every presumption will be indulged in favor of the legality of[6, 7] a common-law marriage in the same way and to the same extent as the law indulges them in favor of a ceremonial marriage. (Howard v. Kelly, supra; Nelson v. Jones,245 Mo. 579, 151 S.W. 80; Phillips v. Wilson, 298 Mo. 186,250 S.W. 408.) If the relationship was illicit in the beginning the burden is upon the party asserting the validity of the marriage to show that the unlawful relationship changed to a lawful one. *Page 385 
(Howard v. Kelly, supra.) The presumption that the second marriage of a person has been preceded by a lawful dissolution of the first one is based partly upon the law's favorite presumption of innocence, and partly upon the concern of the law for the legitimacy of offspring and the integrity of the family. (Thompkins v. Commonwealth, 117 Ky. 138, 77 S.W. 712.) This pronouncement is sustained by the overwhelming weight of authority. (See cases collected in 34 A.L.R. 476, note.) But there is not to be indulged any rigid presumption of a dissolution of the first marriage merely in order to establish the innocence of the parties to the alleged second marriage. (Williams v. Williams, 63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110.)
The essential fact for determination, then, is, was the marriage of Hiram J. Rhodes and Esther O'Brien established? If it was, plaintiff was no longer secure in resting upon the presumption that the marriage between his wife's father and mother continued; in order to prevail it was incumbent upon him to go further and show that the relations between his wife's parents had not been severed by divorce prior to the marriage of her father and Esther O'Brien.
Here a question of pleading is presented. The plaintiff[8] insists that defendants were not entitled to show a common-law marriage upon their pleadings. This position is not tenable. The allegation of Mabel Knapp that Hiram J. Rhodes, "on or about the year 1867," married Esther O'Brien, is the statement of an ultimate fact. The allegations of Hiram E. Rhodes and the Burch heirs are not dissimilar in legal effect. These allegations lack definiteness, it is true, but there was no attack lodged against the answers on that score. Under them proof was admissible to show the existence of a marriage, no matter how contracted. "Marriage is as clearly defined and its meaning as well known as, perhaps, any other word in the English language; and when the relationship is alleged to exist between parties, each knows the facts necessary to constitute *Page 386 
it must be proved." (Cuneo v. DeCuneo, 24 Tex. Civ. App. 436,59 S.W. 284; Harlan v. Harlan (Tex.Civ.App.), 125 S.W. 950;Farley v. Farley, 94 Ala. 501, 33 Am. St. Rep. 141, 10 So. 646; James v. Mickey, 26 S.C. 270, 2 S.E. 130; Fisher v.Fisher, 116 Okla. 129, 243 P. 730.)
Every lawful marriage must have been entered into by the[9] parties at some particular time; it does not result from mere cohabitation alone. "As a general rule, when a marriage is sought to be proved by conduct, cohabitation and repute, the date of the marriage in fact, which such conduct and repute tends to establish, is the date of the commencement of such conduct and repute, and not afterwards." (Williams v. Williams,46 Wis. 464, 32 Am. Rep. 722, 1 N.W. 98.)
Was the evidence advanced by the defendants, tending to show a[10, 11] common-law marriage between the parties, properly admitted? This question we are constrained to answer in the negative. The pleadings do not support the proof. Hiram E. Rhodes alleged a marriage consummated at Brothertown, Wisconsin, "on or about 1867"; Mabel Knapp and the Burch heirs a marriage "on or about the year 1867" subsequent to the death of Mariah R. Rhodes. The defendants failed to prove either of these allegations, and yet these were the allegations plaintiff was called upon to meet; they sought to prove a common-law marriage contracted elsewhere than at Brothertown, and years subsequent to 1867.
As was said in In re Craigie's Estate, 24 Mont. 37,60 P. 495, good pleading and fair practice demand the enforcement of the rule that the pleader must state the facts upon which he bases his action and be confined to them in making proof and obtaining relief. While liberality is favored in the operation of this rule the pleader is not permitted to go outside the issues he has framed to the injury of his adversary.
The record does not disclose any facts which may be said to prove the subsequent marriage, circumstantially or otherwise, *Page 387 
prior to 1882. The fact that prior to that year children were born to the couple is not enough; the mere fact that the couple cohabited is not enough. Indeed, a prior marriage being shown, undissolved, casts upon the relationship of Hiram J. Rhodes and Esther O'Brien, in the absence of proof of a marriage between them, the shadow of illegitimacy. Defendants rely upon the statute which recognizes the common-law rule that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage (sec. 10606, Rev. Codes 1921), but this presumption cannot antedate the year 1882 at best. It must be remembered that if Hiram J. Rhodes was, at the time he began cohabitation with Esther O'Brien, or when he assumed to enter into the marriage relation with her, if he did so, the husband of Mariah R. Rhodes, then he was incapable of entering into a marriage contract with Esther O'Brien. (In re Huston's Estate,supra; Williams v. Williams, 63 Wis. 58, 53 Am. Rep. 253, 23 N.W. 110.)
It seems that during the period covered by the evidence a common-law marriage would have been recognized in both Wisconsin and Minnesota. (State v. Worthington, 23 Minn. 528; Hulett
v. Carey, 66 Minn. 327, 61 Am. St. Rep. 419, 34 L.R.A. 384, 69 N.W. 31; Becker v. Becker, 153 Wis. 226, L.R.A. 1915E, 56, 140 N.W. 1082.)
A marriage valid in the state or county where contracted will[12] be held valid in this state. (In re Huston's Estate,supra.)
We do not feel content to render a final decision upon this record. It is apparent that each side was surprised at the testimony advanced by the other, which may account for the meager evidence adduced. We prefer to remand the case for a new trial. Upon proper application to the court counsel may be permitted to amend their pleadings to cover the facts they desire to present. It may be a fact, susceptible of proof, that the matrimonial bonds once existing between Hiram J. Rhodes *Page 388 
and Mariah R. Rhodes were dissolved before he and Esther O'Brien began their relations; and it may be that a valid marriage between Hiram J. Rhodes and Esther O'Brien can be shown. As the[13] case must be tried again it may be helpful to advert to the declaration of Hiram J. Rhodes as narrated by the plaintiff concerning which there is some controversy between counsel. The declaration is admissible (sec. 10531, Rev. Codes 1921; In reColbert's Estate, 51 Mont. 455, 153 P. 1022), but the weight to be given to it is primarily for the trial court. Testimony of this character should be accepted with caution and scrutinized with great care. With respect to such we need not add to what this court has said in Escallier v. Great Northern Ry. Co.,46 Mont. 238, Ann. Cas. 1914B, 468, 127 P. 458, Roy v.King's Estate, 55 Mont. 567, 179 P. 821, Gray v. Grant,62 Mont. 452, 206 P. 410, and Marcellus v. Wright, 65 Mont. 580,212 P. 299.
For the reasons given the judgment is reversed and the cause is remanded for a new trial.
Reversed and remanded.
ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur. *Page 389