In the Matter of the ESTATE of William O. MILLER, a/k/a William Miller, Deceased.

Nell F. MILLER, Executrix of the Estate of William O. Miller, Deceased, Appellant,

v.

STATE of South Dakota (DIVISION OF TAXATION), Respondent.

No. 11821.

Supreme Court of South Dakota.

Argued May 25, 1976.

Decided July 2, 1976.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, W. O. Delzer, of Delzer & Delzer, Arlington, for appellant.

John P. Dewell, Asst. Atty. Gen., Pierre, for respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

DUNN, Chief Justice.

This case arises from a proceeding to determine the amount of inheritance tax due with respect to the estate of William O. Miller. The South Dakota Division of Taxation denied treatment of the appellant Nell Miller as a widow, stating that the requirements for a nonceremonial or common-law marriage had not been met. Appellant was taxed as a person unrelated to

the decedent. She applied to the circuit court for a hearing on appraisement and determination of inheritance tax. The court upheld the determination of the Division of Taxation. We reverse.

In March 1914, William O. Miller and Nell Fletcher were married ceremonially in Canton, South Dakota. A son was born to the Millers in 1914. William and Nell lived together for twenty-one years, farming first near Montrose and later near Arlington. Sometime in 1935 Nell left her husband and went to Sioux Falls. There she worked as a waitress and lived with her sister. Nell sought and on January 2, 1936, received a default decree of divorce from William upon grounds of wilful neglect and failure to provide a home and necessities of life for more than one year.

In late 1937 or early 1938, William arrived in Sioux Falls and asked Nell to return with him to the farm near Arlington. Asked at trial what was said by the parties at that time, Nell stated:

"He said, 'Will you come on back home?' and I said, 'O.K., will we get married again?' and he said, 'Yeah.'"

Nell returned to the farm and lived with William until his death on April 6, 1974. In December 1952, reciprocal wills were drawn by an attorney in De Smet. In those wills, William and Nell Miller referred to each other as "my divorced husband" and "my divorced wife."

This court has stated that common-law marriage can exist in South Dakota. *Svendsen v. Svendsen,* 1916, 37 S.D. 353, 368, 158 N.W. 410, 414, and *Bracken v. Bracken,* 1922, 45 S.D. 430, 431, 188 N.W. 46. SDCL 25–1–1 and 25–1–29 require that a marriage be solemnized; however, SDCL 25–1–29 excepts "any lawful marriage consented to and subsequently consummated prior to July 1, 1959." The two requirements of consent and consummation were contained and defined in the 1919 and 1939 Codes, which provided:[1]

"Marriage is a personal relation arising out of a civil contract, to which the con-

sent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations."

"The consent to a marriage must be to one commencing instantly, and not to an agreement to marry afterwards."

There is no dispute that the Millers had a mutual assumption of marital rights, duties and obligations. Respondent admitted and the evidence at trial indicated that William and Nell lived together as, acted as though, and were generally regarded by friends and neighbors to be husband and wife. In its memorandum opinion the trial court relied upon the reference in the will to Nell as William's "divorced wife," and found that there "never was an agreement commencing instantly to be married."

Appellant raises three issues on appeal. First, she contends that she and William had a valid common-law marriage. She further contends that the state has no standing to attack the validity of a marital relationship. Lastly, she contends that the divorce is a nullity because no corroboration was shown.

We feel that the trial court relied too heavily upon the language in the wills. The reference in the wills to "my divorced wife" and "my divorced husband" was put in by the draftsman in an abundance of caution. It is clear from the record that the words were not chosen by William or Nell Miller. Nell stated that she did not even read the terms of the will.

The statements made in Sioux Falls evidenced a desire to return to the marital relation. The consent to marry can be shown in many ways. Here, William and Nell resumed their relationship for a period of thirty-six years following a separation of only three years during the depression. The lack of a second ceremony did not affect the permanence of their union. When asked why there was no ceremony, Nell explained:

---

1. R.C. 1919, §§ 102, 105; SDC 1939, §§ 14.0101, 14.0104.

" * * * it never happened. We just worked hard * * * and kept putting it off. You know how things go. I figured, too, we had been married once and he figured that, too."

If consent to marry did not exist at the time of Nell's return to Arlington, we find it existed when she and William made this conclusion. We do not view the term "commencing instantly" to mean that the parties had to reach mutual consent the instant they began living together as husband and wife. This consent could come later, so long as it was a mutual consent at a given time.

█ Although, as stated above, the principle of common-law marriage has been recognized by this court, this case is the first in which we uphold a common-law marriage.[2] Several factors lead to this result. Here, there was a prior ceremonial marriage. The harsh judicial scrutiny of the statements and actions of parties engaged in a common-law relationship should not be applied to an informal remarriage. Such a relationship should be encouraged, not discouraged. *In Re Wagner's Estate*, 1960, 398 Pa. 531, 159 A.2d 495; *In Re Peterson's Estate*, 1961, 148 Colo. 52, 365 P.2d 254. William and Nell Miller were 49 and 45 years old in 1938 when returning to Arlington. They were not blind to the duties and responsibilities of living as husband and wife "because of the consuming anticipation of immediate pleasure." *In Re Erickson's Estate*, 1954, 75 S.D. 345, 355, 64 N.W.2d 316, 321. The time period of their short separation and the permanent reuniting of the couple are also indicative of a legitimate relationship. Nell Miller should be entitled to inheritance tax treatment as William Miller's widow.

Because of our disposition of this issue, we will not consider the other issues raised on appeal.

Reversed.

WINANS, WOLLMAN and COLER, JJ., and FOSHEIM, Circuit Judge, concur.

FOSHEIM, Circuit Judge, sitting as a member of the court.

---

2. This court has declared an annulment judgment void and a marriage valid where the minor parties did not obtain the required parental consent for the marriage license but were of legal age to consent to and consummate a marriage. *Lessert v. Lessert*, 1935, 64 S.D. 3, 263 N.W. 559.